# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 23-cr-368 TNM** |
| **v.** | : | |
| | : | |
| **JUSTIN LEE,** | : | |
| | : | |
| **Defendant.** | : | |

## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT ONE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, opposes the defendant's motion to dismiss Count One. ECF No. 18. The Court should deny the motion because Congress properly exercised its powers under Article I, Section 8, Clauses 3 and 17 to enact 18 U.S.C. § 231(a)(3), and the statute is not unconstitutionally overbroad, vague, or an impermissible regulation of content-based speech.

## BACKGROUND

On October 18, 2023, a seven-count indictment was filed charging Justin Lee with criminal conduct on January 6, 2021. ECF No. 1. In Count One, the indictment alleges that Mr. Lee:

> committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer, that is, an officer from the Metropolitan Police Department, lawfully engaged in the lawful performance of his/her duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function

in violation of 18 U.S.C. § 231(a)(3). *Id.*

On October 19, 2023, the defendant was arraigned on the indictment and pled not guilty. *See* October 19, 2023 Minute Entry. Currently, Mr. Lee's trial is scheduled to begin on May 20, 2024. *See* January 9, 2024 Minute Entry.

## LEGAL STANDARD

An indictment is sufficient under the Constitution and Federal Rule of Criminal Procedure 7 if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and … enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also, id.* ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished[.]"). Thus an indictment need only "echo[] the operative statutory text while also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018), and does not need to inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed," *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976); *see also United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) ("the validity of an indictment 'is not a question of whether it could have been more definite and certain'").

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the Government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record." *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added). Neither action has occurred here.

"If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). Criminal cases have

no mechanism equivalent to the civil rule for summary judgment.  *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) (motions for summary judgment are creatures of civil, not criminal trials); *United States v. Gonzalez*, 2020 WL 6342948, at *5 (D.D.C. Oct. 29, 2020) (explaining that there is no summary judgment procedure in criminal cases or a procedure which permits pretrial determination of the sufficiency of the evidence).  Accordingly, dismissal of a charge does not depend on forecasts of what the Government can prove.  Instead, a criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense.  *United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016).  Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination.

When a court reviews a challenged indictment, the "court affords deference to the 'fundamental role of the grand jury'" and "cabins its analysis to 'the face of the indictment and, more specifically, the language used to charge the crimes.'"  *United States v. Mostofsky*, 579 F. Supp. 3d 9, 15 (D.D.C. 2021); *see also United States v. McHugh*, 2022 WL 1302880 at *2 (D.D.C. May 2, 2022) ("In deciding a motion to dismiss an indictment, the question before the Court is a narrow one, and the court will neither review the sufficiency of the evidence against the defendant nor craft jury instructions on the elements of the crimes charged … dismissal is granted only in unusual circumstances").

## ARGUMENT

The defendant raises three arguments in support of his motion to dismiss Count One, but all lack merit.  Moreover, these same arguments have been repeatedly rejected by judges in this District and around the country.  18 U.S.C. § 231(a)(3) does not exceed Congress's Commerce Clause Authority, it is not an impermissible content-based restriction, and the statute is neither vague nor overbroad.

I.      **Congress Validly Exercised Its Constitutional Authority When It Enacted 18 U.S.C. § 231(a)(3)**

The defendant's attack on the commerce predicate is misdirected and meritless for two reasons. First, in addition to its limited power to regulate foreign and interstate commerce under Article I, Section 8, Clause 3 of the U.S. Constitution, Congress has plenary power under Article I, Section 8, Clause 17 to legislate regarding the District of Columbia. Congress expressly exercised its Clause 17 power when it enacted 18 U.S.C. § 231(a)(3), which prohibits, *inter alia*, obstructing police officers performing their official duties during a civil disorder which has "any effect whatsoever" on commerce "within the District of Columbia." 18 U.S.C. § 232(C); *see also United States v. Grider*, 617 F. Supp. 3d 42, 49 (D.D.C. 2022) ("As such, section 231 authorizes the regulation of civil disorders that impact (1) interstate commerce or (2) commerce wholly within the District of Columbia."). Lee does not address Congress's Clause 17 power, but only its power to regulate interstate commerce under Clause 3, a power that, unlike Clause 17, is bounded by the power of every state to regulate wholly intrastate commerce. Congress's power to regulate not only commerce but matters within the government's police powers with respect to the District of Columbia is not constrained by the power of the states. Thus, the defendant's Commerce Clause challenge to his Section 231(a)(3) charge, for conduct he committed wholly inside the District of Columbia, is beside the point and should be rejected. *See, e.g.*, *Grider*, 617 F. Supp. 3d at 49.

Second, even ignoring Congress's Clause 17 power, Section 231(a)(3) is a valid use of Congress's Clause 3 power since the statute properly regulates an activity which substantially affects interstate commerce. *United States v. Mostofsky*, 579 F. Supp. 3d 9, 19 (D.D.C. 2021). Section 231(a)(3) easily satisfies the test laid out in *United States v. Lopez*, 514 U.S. 549 (1995), as multiple other courts have held.

A.  Congress properly exercised its Article I, Section 8, Clause 17 to prohibit Lee's
conduct inside the District Of Columbia

Lee argues that "Section 231(a)(3) exceeds Congress's Commerce Clause authority."  ECF No. 18-1 at 1; *see also id*. at 4-12.  In support of his contention, he relies principally on *Lopez*, 514 U.S. 549, and *United States v. Morrison*, 529 U.S. 598 (2000), which held, respectively, that Congress exceeded its authority under the Commerce Clause by enacting the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), and the Violence Against Woman Act of 1994, 42 U.S.C. § 13981(b).  *Lopez*, 514 U.S. at 568; *Morrison*, 529 U.S. at 617.  The defendant's argument fails in the first instance because, regardless of whether Section 231(a)(3) exceeds Congress's power under the Commerce Clause—and it does not, *see infra* at 9-14—for cases such as Lee's where the criminal conduct took place wholly within the District of Columbia, the statute fits comfortably within Congress's Article I, Section 8, Clause 17 powers.

Clause 17 states:

The Congress shall have Power … To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States….

U.S. Const. Art. I, § 8, Cl. 17.  Congress's power under Clause 17 "is plenary."  *Palmore v. United States*, 411 U.S. 397 (1973).  "Not only may statutes of Congress of otherwise nationwide application be applied to the District of Columbia, but Congress may also exercise all the police and regulatory powers which a state legislature or municipal government would have in legislating for state or local purposes."  *Id*.; *see also Neild v. District of Columbia,* 110 F.2d 246, 249 (D.C. Cir. 1940) ("Congress may legislate within the District for every proper purpose of government," and "[w]ithin the District of Columbia, there is no division of legislative powers such as exists between the federal and state governments.").  "[W]hen it legislates for the District, Congress … exercise[es] complete legislative control as contrasted with the limited power of a state legislature,

on the one hand, and as contrasted with the limited sovereignty which Congress exercises within the boundaries of the states, on the other. *Nield* 110 F.2d at 250-51; *see also Hyde v. S. Ry. Co.*, 31 App. D.C. 466, 469 (D.C. Cir. 1908) ("The legislative power of Congress over the District of Columbia and the Territories [is] plenary, and [is] not depending upon the interstate-commerce clause[.]").

Section 231 prohibits "any act" that "obstruct[s], impede[s], or interfere[s] with any … law enforcement officer … engaged in [his]official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 231(a)(3). "Commerce," as used in Section 231(a)(3), "means commerce (A) between any State or the District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) *wholly within the District of Columbia*." 18 U.S.C. § 232(2) (emphasis added). Thus, in enacting Section 231(a)(3), Congress relied on its Clause 17 power with respect to conduct in the District of Columbia.

Here, Count One of the Indictment charges that Lee "obstructed and attempted to obstruct a law enforcement officer … incident to a civil disorder," e.g., January 6, that "adversely affected" "in any way or degree" "commerce," meaning, *inter alia*, commerce "wholly within the District of Columbia." So regardless of whether Congress had authority under the Commerce Clause to regulate such criminal conduct in jurisdictions other than the District of Columbia, it did not and could not exceed its "plenary authority" to exercise "police power" within the District of Columbia unless that exercise somehow violated another provision of the Constitution, which Section 231(a)(3) clearly does not, and Lee does not argue so. *See Grider*, 617 F. Supp. 3d at 49–50 ("Congress may also exercise all the police and regulatory powers which a state legislature or

municipal government would have in legislating for state or local purposes.  The prohibition of riots is, of course, a central police power[.]" (internal citation omitted)); *see also, generally, Darnell v. Markwood*, 220 F.2d 374, 375–376 (D.C. Cir. 1954) (reversing dismissal of complaint under the Sherman Act, 15 U.S.C. §§ 1, 2, and 3, alleging that defendants "restrain[ed] interstate trade and commerce, and trade and commerce in the District" of Columbia; although defendants' activities wholly within the District of Columbia "do not come within the control of the Commerce Clause, or, therefore, within either Sections 1 or 2 of the Sherman Act … Section 3 … is not dependent upon the Commerce Clause but rests upon the plenary legislative power of Congress within the District of Columbia").

It is true that Congress's Commerce Clause power is cabined by the retained authority of the states to regulate commerce wholly within their borders, *Morrison*, 529 U.S. at 617-28; *Lopez*, 514 U.S. at 559, and that Congress may not "regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce," *Morrison*, 529 U.S. at 617; *see also*, ECF No. 18-1 at 5-6.  But while it lacks power to regulate purely intrastate commercial matters, Congress has plenary authority to regulate wholly local matters *within* the District of Columbia.  And "the power of Congress under Clause 17 permits it to legislate for the District in a manner with respect to subjects that would exceed its powers, or at least would be very unusual, in the context of national legislation enacted under other powers delegated to it under Art. I, § 8." *Palmore*, 411 U.S. at 397-98.  Thus because Clause 17, rather than Clause 3, provided Congress with plenary authority to prohibit conduct that had any effect whatsoever on commerce within the District of Columbia, all of Lee's challenges to the commerce element of Section 231(a)(3) are beside the point, because they are grounded on limitations on Congress's power under Clause 3.

Moreover, even for criminal statues with national application that do not single out commerce within Washington, D.C. for special protection, as Section 232(2)(C) does with respect to Section 231(a)(3), Commerce Clause challenges to prosecutions for crimes occurring wholly within the District must also fail. *See United States v. Mahdi*, 598 F.3d 883, 896 (D.C. Cir. 2010) (rejecting claim that VICAR, 18 U.S.C. § 1959, "is facially unconstitutional as it violates the Commerce Clause"; "[I]t is impossible to see how a statute regulating conduct within the District of Columbia could exceed congressional authority under the Commerce Clause"); *see also, id*. ("Even if there were some doubt about § 1959's constitutionality outside the District of Columbia, 'we need not find the language of [§ 1959] constitutional in all its possible applications in order to uphold its facial constitutionality.'"); *accord United States v. Carson*, 455 F.3d 336, 368 (D.C. Cir. 2006) ("Within the District, Congress did not need to rely on its Commerce Clause authority.").  This is an additional reason why this Court should reject Lee's challenge to the commerce predicate in the § 231(a)(3) count, where Congress expressly targeted domestic disorders that affected commerce within the District.

Lee's Commerce Clause challenge lacks merit since Congress prohibited Lee's conduct pursuant to its powers over Washington, D.C. under Clause 17.  The Court can end its inquiry and reject Lee's Commerce Clause argument based on this alone. *See, e.g.*, *Grider,* 617 F. Supp. 3d at 50 ("The Constitution endows Congress with plenary power over the District of Columbia … As such, the Court need not reach Defendant's Commerce-Clause argument in order to conclude that Congress has the constitutional authority to regulate civil disorders within the District of Columbia."); *cf. Mostofsky*, 579 F.Supp.3d at 20–21 (agreeing, in dicta, that Clause 17 empowered Congress to enact section 231 as to civil disorders within the District of Columbia).

B.  Lee's Commerce Clause challenge to § 231(a)(3) is meritless in its own right.

While the Court need not reach this issue and can deny Lee's commerce clause challenge based on Congress's Clause 17 powers alone, as the court in *Grider* did, Lee's commerce clause challenge also lacks any merit in its own right.

In *Lopez*, the Supreme Court found that there are "three broad categories of activity that Congress may regulate" under its interstate commerce power:

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce.

514 U.S. at 558–59 (citations omitted).  The relevant inquiry here is whether Section 231(a)(3) "substantially affects" interstate commerce.  *Mostofsky*, 579 F. Supp. 3d at 16.  When faced with this inquiry, courts rely on the "four *Lopez* factors" to determine whether an activity has a "substantial effect" on interstate commerce:

> (1) whether the activity itself has anything to do with commerce or any sort of economic enterprise, however broadly one might define those terms; (2) whether the statute in question contains an express jurisdictional element; (3) whether there are express congressional findings or legislative history regarding the effects upon interstate commerce of the regulated activity; and (4) whether the relationship between the regulated activity and interstate commerce is too attenuated to be regarded as substantial.

*United States v. Reed*, 2017 WL 3208458, at *8 (D.D.C. July 27, 2017).

Beginning the inquiry, as Chief Judge Boasberg did in *Mostofsky*, with the second *Lopez* factor, this factor examines whether the statute in question has "a 'minimal nexus' to interstate commerce."  *Mostofsky*, 579 F. Supp. 3d at 17; *see also Scarborough v. United States*, 431 U.S. 563, 568 (1977) (same, upholding felon-in-possession statute).  Here, Section 231(a)(3) contains

an express jurisdictional element "because it requires that the 'civil disorder' during which the act 'to obstruct, impede, or interfere with' a law-enforcement officer performing his duties occurs must be one that 'in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce.'" *Mostofsky*, 579 F. Supp. 3d at 17; *see also id.* ("So does § 231(a)(3) contain such a jurisdictional element? The answer is yes...."); *Wood*, 2021 WL 3048448, at *4-6 (rejecting defense claim, based on *Morrison* and *Lopez*, that "§ 231(a)(3) unconstitutionally exceeds Congress's authority and intrudes into the States' primary role in general law enforcement because it broadly applies to purely local conduct and requires only an attenuated connection to interstate commerce"; "courts have held that 'despite *Lopez* and *Morrison*, the Government need only show a minimal effect on interstate commerce when the statute contains an explicit jurisdictional element'").  Satisfying the second *Lopez* factor "is typically enough to satisfy the Commerce Clause," and since Section 231(a)(3) does so, the statute is a valid exercise of Congress's Commerce Clause power.  *Mostofsky*, 579 F. Supp. 3d at 16.

Contrast Section 231(a)(3), which has an express jurisdictional element, to the challenged statutes in both *Lopez* and *Morrison*, which contained no jurisdictional element requiring the Government to prove that the offense conduct affected interstate commerce.  *See Lopez*, 514 U.S. at 561-62 (Gun Free Schools Zone Act "contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce," in contrast to former 18 U.S.C. § 1202(a), "which made it a crime for a felon to 'receiv[e], posses[s], or transpor[t] in commerce or affecting commerce ... any firearm'"); *Morrison*, 529 U.S. at 613 (the Violence Against Women Act, "[l]ike the Gun–Free School Zones Act at issue in *Lopez*, … contains no jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce"; "Congress elected to cast § 13981's remedy

over a wider, and more purely intrastate, body of violent crime").  *Lopez* and *Morrison* are thus no help to the defendant.

While the defendant concedes, as he must, that "§ 231(a)(3) contains a commercial nexus element," ECF No. 18-1 at 8, he attempts to navigate around this obstacle by arguing that (1) the jurisdictional "element is faulty because it does not limit the reach of the statute to activities that 'substantially affect' interstate commerce"; (2) language in Section 231(a)(3) creates too attenuated a connection with interstate commerce; and (3) the commercial nexus/jurisdictional element is insufficient because it "does not require a substantial effect on interstate commerce." ECF No. 18-1 at 8-9.  These arguments are wrong and have been rejected by other courts.  For example, in *Mostofsky*, when discussing Section 231(a)(3), the court held in response to these arguments that: (1) "[w]hen a person deliberately commits some act to obstruct, impede or interfere with those officers [who are 'attempting to quell an interference with interstate commerce'], that person is impacting interstate commerce"; (2) "'the incident to and during' language in § 231(a)(3) does not suggest that the 'act' or 'lawful performance of [an officer's] official duties' is somehow minimally related to the civil disorder" and is thus not too attenuated; and (3) "the 'substantiality' requirement does not apply in the context of determining what quantum of evidence is required to satisfy statutory interstate commerce jurisdictional elements,' a statute may be upheld when it contains an element that requires that 'the conduct criminalized must affect or attempt to affect commerce in some way or degree.'"  579 F. Supp. 3d at *18-19 (internal citations omitted).

Multiple courts have found Section 231(a)(3) to be a valid exercise of Congress's Commerce Clause power based solely on finding the second *Lopez* factor satisfied.  *See, e.g.*, *id.* at 20 ("looking beyond the jurisdictional element is not required, and the Court observes that all recent district-court opinions to have considered whether § 231(a)(3) is valid under the Commerce

Clause have done so solely based on that factor"); *United States v. Phomma*, 2021 WL 4199961, at *2-3 (D. Or. Sept. 15, 2021) (notwithstanding *Lopez* and *Morrison*, "§ 231(a)(3) is within Congress's Commerce Clause authority because the statute includes an express jurisdictional element, requiring that the defendant's obstruction or interference with a law enforcement officer or firefighter must occur 'during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce.'"); *accord, United States v. Howard*, 2021 WL 3856290, at *11 (E.D. Wis. Aug. 30, 2021); *United States v. Wood*, 2021 WL 3048448, at *4–6 (D. Del. July 20, 2021); *United States v. Pugh*, 20-cr-00073, ECF No. 95 at 7-11 (S.D. Ala., May 13, 2021); *see also Terry v. Reno*, 101 F.3d 1412, 1418 (D.C. Cir. 1996) ("Lopez's fundamental proposition is that Congress must ensure that its Commerce Clause power to regulate non-commercial activities extends to only those activities that substantially affect interstate commerce. *Congress may do so either through its own legislative findings or by including a jurisdictional element in the statute; it need not do both*." (emphasis added)).

While Section 231(a)(3)'s satisfaction of the second *Lopez* factor is enough to uphold Section 231(a)(3) as a valid exercise of Congress's Commerce Clause power, the three other *Lopez* factors are also satisfied.  As to the first factor, that the regulated activity is commercial/economic in nature, Lee argues that Section 231(a)(3) regulates criminal conduct without a sufficiently close connection with a commercial good or activity.  ECF No. 18-1 at 7-8.  However, "*Morrison* did not bar regulation of noneconomic conduct that affects interstate commerce in individual instances … [t]he jurisdictional element in § 231(a)(3) requires precisely a showing that the regulated conduct 'interferes with or otherwise affects commerce' — namely, that the individual civil disorder at issue 'obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce.'"  *Mostofsky*, 579 F. Supp. 3d at *19; *see also United States v. Hill*,

927 F.3d 188, 199 (4th Cir. 2019) ("Congress may proscribe violent conduct when such conduct interferes with or otherwise affects commerce over which Congress has jurisdiction.").  The first *Lopez* factor is thus satisfied by Section 231(a)(3).

For the third *Lopez* factor, as Lee admits, "[f]ormal congressional findings are neither required nor sufficient to establish a valid exercise of federal commerce authority," so the lack of express findings for Section 231(a)(3) has no impact on the analysis.  ECF No 18-1 at 10; *see also Lopez*, 514 U.S. at 562-563.  Lastly, for the fourth *Lopez* factor, the relationship between the activity regulated under Section 231(a)(3) and commerce is not attenuated because "[w]hen a person deliberately commits some act to obstruct, impede or interfere with those officers, that person is impacting interstate commerce."  *Howard*, 2021 WL 3856290, at *10.  Congress defined a civil disorder as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1). Put another way, the disorder must be sufficiently severe that it involves at least three individuals engaged in acts of violence. *Id.* Violence is not trivial.  On top of that, the statute requires the disorder to affect interstate commerce.  18 U.S.C. § 231(a)(3).  There is thus a direct relationship between the regulated activity and commerce.

Lee's Commerce Clause argument lacks merit because Section 231(a)(3) satisfies the *Lopez* factors, meaning that it substantially affects commerce.  The Court should join with others that have roundly rejected identical arguments to Lee's, not just in this District, but across the country.  Indeed, Lee's commerce clause argument is almost identical to the argument made by the appellant in *United States v. Pugh*, which the 11th Circuit recently rejected.  *See* 90 F.4th 1318, 1328 (11th Cir. 2024).

C. Lee fails to address 18 U.S.C. § 231(a)(3)'s alternative jurisdictional hook: that the civil disorder adversely affected a federally protected function

Section 231(a)(3) contains two jurisdictional hooks: that the civil disorder adversely affects interstate commerce *or* the performance of a federally protected function. *See Mostofsky*, 2021 WL 6049891, at *3 (noting that the government can obtain conviction under either the "commerce" prong or the "federally protected function" prong of § 231 (a)(3)). "Federally protected function" is defined as "any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof." 18 U.S.C. § 232(3).

Lee does not argue that Section 231(a)(3) exceeds Congress's power in regard to the federally protected function hook; Lee never addresses this alternative jurisdictional hook anywhere in his briefing. Evidence at trial could establish the federally protected function alternative to establishing a federal basis for prosecution through, for example  the United States Secret Service's protection of the Vice President and his family, *see United States v. Nordean*, 579 F. Supp. 3d 28, 55-56 (D.D.C. 2021), or the United States Capitol Police's obligation to protect the United States Capitol, *see* 2 U.S.C. § 1961. So, even assuming *arguendo* that the Court agreed with the Defendant's commerce clause arguments, Count One would still stand against the defendant.

***

In sum, the defendant's arguments that Section 231(a)(3) exceeds Congress's Commerce Clause authority all fail because: (1) in addition to its limited power to regulate foreign and interstate commerce under Article I, Section 8, Clause 3 of the U.S. Constitution, Congress has plenary power under Article I, Section 8, Clause 17 to legislate regarding the District of Columbia; (2) Section 231(a)(3) satisfies the *Lopez* factors which demonstrates that the statute did not exceed

Congress's Clause 3 power; and (3) Lee does not challenge the alternate basis for jurisdiction, that the civil disorder adversely effects a  federally protected function.  The Court should follow other courts in this District and across the country and reject the defendant's Commerce Clause arguments.

## II.     18 U.S.C. § 231(a)(3) Is Not Unconstitutionally Overbroad Nor Is It A Content-Based Restriction On Speech

Lee next contends that Section 231(a)(3) is unconstitutionally overbroad because it "extends to a substantial amount of constitutionally protected speech and expressive conduct, well in excess of the law's legitimate sweep." ECF No. 18-1 at 13.  The defendant, however, does not mention his conduct on January 6, much less explain how charging him with a violation of Section 231(a)(3) undermined any First Amendment rights that he intended to exercise that day.  Lee thus raises only facial challenges to the statute which do not depend in any way on its application to this case.[1]

A criminal law is facially overbroad only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008); *United States v. Williams*, 553 U.S. 285, 293 (2008); *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972).  A facial overbreadth challenge faces a steep climb when the statute focuses mainly on conduct, as Section 231(a)(3) does.  *See Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial

---

[1] A party raising a facial challenge must establish "that no set of circumstances exists under which [the challenged statute] would be valid or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010). The person challenging the statute need not show injury to himself.  *See Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984).  On the other hand, to prevail on an as-applied First Amendment challenge, the person challenging the statute must show that the regulations are unconstitutional as applied to their particular speech activity.  *See Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 802-03 (1984); *accord, Edwards v. D.C.*, 755 F.3d 996, 1001 (D.C. Cir. 2014).

social costs created by the overbreadth doctrine when it blocks application of a law to ... constitutionally unprotected conduct"). The requirement that a defendant who violates Section 231(a)(3) act with the intent to obstruct, interfere or impede is critical to the First Amendment analysis. *See United States v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir. 1987) (intent requirement prevents application of statute to protected speech). As the party making the overbreadth challenge, Lee bears the burden to show that the statute is substantially overbroad. *United States v. Fleury*, 20 F.4th 1353, 1362 (11th Cir. 2021).

Like every other January 6 defendant who has argued that Section 231(a)(3) is facially overbroad, Lee's argument lacks any merit because the statute's text limits its reach and it is not a content-based restriction. *See e.g.*, *United States v. Mock*, 2023 WL 3844604, at *5 (D.D.C. June 6, 2023); *United States v. Gossjankowski*, 2023 WL 130817, at *7 (D.D.C. Jan 9, 2023); *Grider*, 617 F. Supp. 3d at 53; *United States v. Fischer*, 2022 WL 782413, at *3-4 (D.D.C. March 15, 2022) )*, rev'd and remanded on other grounds,* 64 F.4th 329 (D.C. Cir. 2023), *cert. granted,* 144 S. Ct. 537 (2023); *Mostofsky*, 579 F. Supp. 3d at 24.

A. <u>The language of Section 231(a)(3) forecloses any overbreadth concerns</u>

The language of Section 231(a)(3) includes at least four features which limit its reach to criminal conduct and guard against its application to protected speech. First, the covered act must "obstruct, impede, or interfere" with a law enforcement response. 18 U.S.C. § 231(a)(3). The noun "act" combined with those verbs applies most naturally in this context of physical acts that affect the law enforcement response to a civil disorder. *See Williams*, 553 U.S. at 294 (considering the "string of operative verbs" as a limitation on the covered conduct). This text thus ensures that any conduct, however it may be characterized, is not protected speech.

Second, the obstructive act must affect an officer's performance of their duties "incident to and during the commission of" the civil disorder.  18 U.S.C. § 231(a)(3).  In other words, the obstruction must affect duties relating to the response as the disorder occurs.  It thus excludes obstructive acts lacking this connection.

Third, the act must inhibit the response to a civil disorder, which the statute defines as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."  *Id.* at § 232(1).  This definition includes various objective metrics that differentiate a civil disorder from other events, as it must involve at least three people, the people must engage in acts of violence, and the violence must pose "an immediate danger" of injury to persons or property or result in those injuries.  *Id.*  These second and third limitations, taken together, exclude acts that are connected to non-violent protest events.  Instead, while the act need not be a part of the civil disorder, it must impair the efforts by law enforcement to quell the disorder.  *See Williams*, 553 U.S. at 294-96 (analyzing various features of a statute that cut against overbreadth).

Fourth, Section 231(a)(3) requires intent.  The defendant must *intend* to obstruct, impede, or interfere with the law enforcement activities.  *See Nat'l Mobilization Comm. to End the War in Viet Nam v. Foran*, 411 F.2d 934, 938 (7th Cir. 1969); *United States v. Mechanic*, 454 F.2d 849, 854 (8th Cir. 1971); *United States v. Riley Williams*, 21-cr-0618, 2022 WL 2237301, at *6-7 (D.D.C. June 22, 2022).  Requiring an intent to obstruct is yet another limit on what conduct could be captured by Section 231(a)(3).

Taken together, these textual limitations cabin the statute's application and guard against any possible overbreadth concerns.

B. <u>Lee's overbreadth arguments have been repeatedly rejected in other January 6 cases</u>

In contrast to the plain text of Section 231(a)(3), Lee's speculative challenges, which repeat failed arguments made by other January 6 defendants, lack merit.  Lee postulates that the term "any act" and the verb "interfere" suggest the possibility that Section 231(a)(3) could somehow reach "the outer limits" of expressive conduct.  ECF No. 18-1 at 14.  But Lee fails to provide any examples of how such acts would reach expressive conduct; he simply makes an unsupported statement without explaining how the undefined "outer limits" of expressive conduct would "obstruct, impede, or interfere" with a law enforcement response to a civil disorder. 18 U.S.C. § 231(a)(3).

Lee also argues that the term "civil disorder" is too far-reaching/sweeps too broadly.  ECF No 18-1 at 15-16.  Although it is true that events of various sizes and locations may constitute a civil disorder, all civil disorders must involve acts of violence.  18 U.S.C. § 232(1).  Every disorder must affect commerce as well.  18 U.S.C. § 231(a)(3).  On top of that, the defendant must commit an obstructive act that affects law enforcement. *Id.* When read as a whole provision, Section 231(a)(3) does not leave space for substantial overbreadth.  Even if there could be close cases at the margins, the Court could address those concerns on an as-applied basis.  *See Williams*, 553 U.S. at 302-03.

Lee oddly cites to the Supreme Court's decision in *City of Houston v. Hill*, 482 U.S. 451 (1987) in support of his argument.  ECF No. 18-1 at 13-14.  In *Hill*, the Court concluded that an ordinance which made it illegal "to interrupt a police officer in the performance of his or her duties" was overbroad. 482 U.S. at 453, 467.  The Court explained that other portions of the ordinance that addressed conduct, such as assaults, had been preempted by state law, and the

covered categories prohibited "verbal interruptions of police officers." *Id.* at 460-461. The ordinance was overbroad then because many types of verbal criticism are lawful. *Id.* at 461-62.

Section 231(a)(3) presents a sharp contrast with the ordinance at issue in *Hill*. In *Hill*, much of the obstructive conduct, namely assaulting and striking an officer, had been preempted by the state's penal law. 482 U.S. at 460. In contrast, Section 231(a)(3) punishes physical acts that obstruct law enforcement. Moreover, the operative verbs in Section 231(a)(3)—obstruct, impede, and interfere—bear little resemblance to the ordinance's reference to interruptions. *Id.* at 461. *Hill* therefore does not support a conclusion that § 231(a)(3) is substantially overbroad.[2]

Courts in this District have repeatedly rejected the exact same arguments raised by Lee. For example, rejecting an overbreadth challenge to Section 231(a)(3) in *United States v. Williams,* Judge Berman Jackson noted that "[i]n the past year, at least four other courts in this district have considered whether section 231(a)(3) is overbroad on its face, and all have concluded it is not." 2022 WL 2237301, at *6.[3] The court "agree[d] with the reasoning in those decisions." *Id.* "First, the statute plainly covers conduct, not speech, as it criminalizes 'any *act* to obstruct, impede, or interfere with' a law enforcement officer engaged in the performance of official duties, and the terms 'obstruct, impede, or interfere with' are all plainly understood and must be supported by the facts in any particular case." *Id.* (emphasis added). "Although some 'acts' could also serve an expressive function, and one could come up with a hypothetical scenario in which the alleged

---

[2] Lee takes other case law out of context. For example, on page 16 of his brief, Lee cites to *United States v. Stevens*, 559 U.S. 460 (2010), in a manner implying that the case addressed Section 231(a)(3). It did not. The case addresses an animal cruelty ordinance.

[3] Citing *McHugh*, 2022 WL 296304, at *17; *Mostofsky*, 2021 WL 6049891, at *8–9; *Nordean*, 2021 WL 6134595, at *17; and *Fischer,* 2022 WL 782413, at *3 (*rev'd on other grounds*). Judge Berman Jackson also cited three out of district cases that reached the same result: *Howard*, 2021 WL 3856290, at *11-12; *Phomma*, 561 F. Supp. 3d 1059, 1067-68; and *Wood*, 2021 WL 3048448, at *7-8.

interference involved particularly obstreperous speech, the law does not require dismissing a charge merely because there is a possibility that the provision could reach some constitutionally protected activity." *Id.* "Since section 231(a)(3) does not 'make unlawful a substantial amount of constitutionally protected conduct,' it is not overbroad on its face." *Id.* (citing *Hill*, 482 U.S. at 459); *see also Fischer*, 2022 WL 782413, at *3-4 (*rev'd on other grounds*) ("The text shows that § 231(a)(3) covers 'primarily, if not exclusively conduct and unprotected speech, such as threats.'"); *Mostofsky*, 579 F. Supp. 3d at 22-24 (rejecting overbreadth challenge to § 231(a)(3) and observing that Section 231's "plain text, however, indicates that it is 'targeted primarily if not exclusively at conduct rather than speech"); *Nordean*, 579 F. Supp. 3d at 56-58 (§ 231(a)(3) is neither vague nor overbroad); *McHugh*, 583 F. Supp. 3d at 24-29 (same); *see also Pugh*, 90 F.4th at 1331 ("It is obvious that" Section 231(a)(3) is not overbroad … "It is sufficient to say that [the appellant] cannot identify from the text of Section 231(a)(3) or from any actual prosecutions that 'a substantial number of instances exist in which [the provisions] cannot be applied constitutionally.'").

The defendant gives the Court no reason to depart from the unanimous holdings of other judges in this District and elsewhere; Section 231(a)(3) is not unconstitutionally overbroad.

C.  Section 231(a)(3) regulates conduct, it is not a content-based restriction on speech

Lee also argues that Section 231(a)(3) is an impermissible restriction on content-based speech; specifically, that it regulates political movements which support civil rights.  ECF No. 18-1 at 16-22.  This is wrong.  Section 231(a)(3) does not regulate protected speech or expressive conduct and, even if it did, it is not a content-based law that is subject to strict scrutiny.

"Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are

narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz*., 576 U.S. 155, 163 (2015). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id*. "Deciding whether a particular regulation is content based or content neutral is not always a simple task…. [T]he principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of [agreement or] disagreement with the message it conveys." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994). In other words, "laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based" while "laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." *Id.* at 643. Supreme Court precedent "also recognize[s] a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be 'justified without reference to the content of the regulated speech,' or that were adopted by the government 'because of disagreement with the message [the speech] conveys[.]' Those laws, like those that are content based on their face, must also satisfy strict scrutiny." *Reed*, 576 U.S. at 163.

Section 231(a)(3) is not a content-based regulation of speech. Rather, Section 231(a)(3) regulates criminal obstructive *conduct* directed at law enforcement. *See Phomma*, 561 F. Supp. 3d at 1068 ("The words 'any act' [in Section 231(a)(3)] imply that the statute is directed towards conduct rather than speech"); *Howard*, 2021 WL 3856290, at *11 ("The language of § 231 targets conduct, specifically conduct that obstructs, impedes, or interferes with law enforcement officers lawfully engaged in the lawful performance of their duties during a civil disorder that negatively impacts interstate commerce."); *see also Rumsfeld v. Forum for Academic & Institutional Rights*, Inc., 547 U.S. 47, 66 (2006) (explaining that a defendant does not convert conduct into speech

"simply by talking about it").   This simple fact undermines Lee's entire argument and shows that Section 231(a)(3) is not a content-based restriction.

But even if Section 231(a)(3) were directed to speech, looking at the statute's text, it only applies to "any act to obstruct, impede, or interfere with any fireman or law enforcement officer" performing official duties "incident to and during the commission of a civil disorder" which affects commerce or a federally protected function. 18 U.S.C. § 231(a)(3).   Because the statute criminalizes "any act to obstruct, impede, or interfere," *id.*, it does not "draw[ ] distinctions based on the message" conveyed by the relevant act, *Reed*, 576 U.S. at 163.   Section 231(a)(3) is thus content neutral.   *See Pugh*, 90 F.4th at 1332 ("we hold that § 231(a)(3) is not a content-based regulation of speech").

Perhaps acknowledging that Section 231(a)(3) is content-neutral, Lee emphasizes that because Section 231(a)(3) was allegedly adopted to suppress speech in support of civil rights, it falls into a category of content-neutral speech laws that are still considered content-based.   ECF No. 18-1 at 19-20.[4]   But Lee's argument is factually and legally wrong because "a legislative restriction imposed by legislators with particular viewpoints or intentions is not constitutionally infirm unless the language of that legislative restriction discriminates against those who are subject to the statute based on their particular viewpoints.   Section 231(a)(3) does not restrict speech, nor does it punish an individual for holding a particular point of view." *Howard*, 2021 WL 3856290, at *7.

---

[4] Lee refers the Court to exhibits which supposedly support his contention.   However, the defendant did not attach any exhibits to his motion and has not provided them to the government. *See, e.g.*, ECF No 18-1 at 19 (referencing "Exhibits A-D" which are not attached to the motion or filed on ECF).   Because the government is unable to review and respond to these missing exhibits, they should not be considered by the Court, even if Lee files them late.

To start, Senator Russell B. Long, who Lee puts forth as the sole source of legislative intent behind Section 231(a)(3), ***did not vote*** for the bill which enacted the statute into law. *See Wood*, 2021 WL 3048448, at *8. His thoughts and views therefore do not constitute valid legislative history for Section 231(a)(3). *Id.*

But even if the supposed statements of a single Senator who did not vote to enact Section 231(a)(3) were valid indicators of legislative intent, this would still not transform the statute into a content-based regulation warranting strict scrutiny because the plain text shows the statute is content-neutral. In *Phomma*, the defendant made the same argument as Lee, and the court replied that:

> Over the past fifty years, the statute has been applied to civil disorders across the political spectrum, including the recent riots on January 6, 2021 in Washington, D.C. Whatever the original intentions of the legislators who passed § 231(a)(3) in 1968, the statute on its face does not regulate speech based on content. The Supreme Court recently stated, "This Court has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end. The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Bostock v. Clayton Cnty.*, ––– U.S. ––––, 140 S. Ct. 1731, 1749, 207 L.Ed.2d 218 (2020). As the court in *Howard* pointed out, "a legislative restriction imposed by legislators with particular viewpoints or intentions is not constitutionally infirm unless the language of that legislative restriction discriminates against those who are subject to the statute based on their particular viewpoint. Section 231(a)(3) does not restrict speech, nor does it punish an individual for holding a particular point of view." 2021 WL 3856290, at *8; *see also Wood*, 2021 WL 3048448, at *8 (accord). A statute that is content-neutral on its face, such as the statute at issue here, may still be subject to strict scrutiny if "the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Here, Defendant has not shown that § 231(a)(3) targets speech, much less specific messages. The history of the statute, as mentioned above, shows that it has been applied to defendants across the political spectrum. I conclude that legislative history is not relevant here, and that § 231(a)(3) does not violate the First Amendment.

561 F. Supp. 3d at 1069; *see also Wood*, 2021 WL 3048448, *4 (finding Section 231(a)(3) to be content-neutral and rejecting the defendant's reliance on Senator Long's comments).

Simply put, the selected excerpts from the Congressional Record Lee provides are not valid legislative history, and regardless, legislative history cannot trump the plain text of a statute. *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 653 (2020) ("the limits of the drafters' imagination supply no reason to ignore the law's demands. When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit."). Section 231(a)(3) proscribes conduct, it does not regulate content-based speech.

### III.  18 U.S.C. § 231(a)(3) Is Not Void For Vagueness; Its Terms Are Clear And Other Courts Have Repeatedly Rejected This Argument

Section 231(a)(3) satisfies the Due Process Clause because it gave fair notice to Lee that he engaged in prohibited conduct when he stormed the Capitol on January 6, 2021 during a violent disturbance. The statute provides ample standards to judge whether conduct is unlawful. It is not unconstitutionally vague.

The "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). When a statute prohibits activity, it must define the conduct "'with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 525 (1994). A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *Williams*, 553 U.S. at 306, or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly

subjective" application. *Williams*, 553 U.S. at 306; *see also Smith v. Goguen*, 415 U.S. 566, 578 (1974). A statutory provision is "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017). A statute is instead vague where it fails to specify any "standard of conduct … at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). A law is also not vague because it "call[s] for the application of a qualitative standard … to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly … some matter of degree.'" *Johnson*, 576 U.S. at 603-04.

To ensure fair notice, "generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonably opportunity to familiarize itself with its terms and to comply." *Bronstein*, 849 F.3d at 1107 (citation omitted). There is a strong presumption that a statute is not vague. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). Courts in this district have recognized that high bar. *See Gonzalez*, 2020 WL 6342948, at *7; *see also United States v. Harmon*, 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 vagueness motion). Lee cannot overcome this presumption.

Section 231(a)(3) is not unconstitutionally vague. It provides sufficient notice of the conduct it prohibits. The terms which Lee takes issue with—"any act"; "to obstruct, impede, or interfere"; "incident to and during the commission of a civil disorder"; and "in any way obstructs, delays, or adversely affects commerce"—do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement." *Johnson*, 5576 U.S. at 595; *see also Nordean*, 579 F. Supp. 3d at 57 (observing that "there are specific fact-based ways to determine whether a 'defendant's conduct interferes with or impedes others,' or if a law

enforcement officer is performing his official duties 'incident to and during' a civil disorder.")
These are common words easily understood by an individual of average intelligence.  Rather, Lee's
motion "misunderstand[s]" vagueness: "There is a crucial difference between reasonable people
differing over the meaning of a word and reasonable people differing over its application to a given
situation – the latter is perfectly normal, while the former is indicative of constitutional difficulty."
*McHugh*, 583 F. Supp. 3d at 27; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)
("perfect clarity and precise guidance have never been required" for a statute to pass muster).
Section 231(a)(3) readily offers sufficient "minimal guidelines" to inform the public on the scope
of the prohibition and to guide the enforcement of the statute.  *Kolender v. Lawson,* 461 U.S. 352,
358 (1983).

Looking more closely at the statute, the defendant's conduct clearly falls within the ambit
of Section 231(a)(3), defeating his vagueness challenge.  The Court must consider vagueness "as
applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly
proscribed cannot complain of the vagueness of the law as applies to the conduct of others."
*Nordean*, 579 F. Supp. 3d at 57; *see generally Wood*, 2021 WL 3048448, at *9 ("Defendant does
not have standing to bring a facial vagueness challenge" to Section 231(a)(3) because he failed to
"demonstrate that [the statute] is vague as applied to his conduct").  The January 6, 2021 attack on
the United States Capitol was clearly a "civil disorder," not just some "tumultuous public
gathering" to which the police were called.  *See* ECF No. 18-1 at 23.  And there is no question that
the defendant participated in the disorder through his actions at the Lower West Terrace tunnel.
Tracking the statutory language, the Indictment alleges that Lee "commit[ted] an act to obstruct,
impede, and interfere with a law enforcement officer."  The defendant crossed into the restricted
area, stood at the entrance to the Lower West Terrace tunnel where rioters were clearly battling

officers, and threw objects at police in an effort to breach the entrance to the U.S. Capitol that the officers were defending, amongst other actions that day.  The defendant was not a mere bystander, he was an active participant in a civil disorder.  Section 231(a)(3) is "sufficiently clear that a normally intelligent person could ascertain its meaning and would be given fair notice of whether or not his conduct is forbidden." *Mechanic*, 454 F.2d at 854.

Further, Section 231(a)(3) provides guidance on the types of conduct that count as a violation.  Indeed, the statute expressly defines what counts as a "civil disorder" and who qualifies as a "fireman" or a "law enforcement officer."  18 U.S.C. §§ 232(1), 232(6), 232(7).  As for the covered acts, the statute applies only to those acts that "obstruct, impede, or interfere" with the response to the civil disorder.  *Id*. at § 231(a)(3).  These verbs contemplate a tangible action that impacts the officer's performance of her duties to quell a disorder.  A violation does not rest on the ipse dixit of an officer.  A person of common understanding can anticipate Section 231(a)(3)'s scope.

Lee also relies on the Supreme Court's decision in *Johnson*, 576 U.S. 591, which struck down the residual clause in the Armed Career Criminal Act (the "ACCA").  *Johnson* does not apply here.  Section 231(a)(3) does not require police officers, prosecutors, juries, or courts to engage in a subjective and unbounded assessment of risk. Instead, it provides standards to determine whether an individual defendant's actions have broken the law. Nor have courts demonstrated an inability to apply Section 231(a)(3).

Lee next contends that Section 231(a)(3) uses subjective terms in connection with both the defendant's actions and the connection to a civil disorder.  Not so.  At its core, the statute provides concrete guidance on what conduct is unlawful. The statute's text relies not on an officer's perceptions, but on the defendant's intended impacts.  In that sense, § 231(a)(3) bears a strong

resemblance to other obstruction statutes.  For example, Congress has provided that a defendant cannot use bribery "to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute [.]"  18 U.S.C. § 1510(a).  Witness tampering statutes prohibit the use of intimidation, threats, and so-called corrupt persuasion that a defendant intends to "influence, delay, or prevent the testimony of any person in an official proceeding" or that the defendant intends to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States[.]"  18 U.S.C. §§ 1512(b)(1), 1512(b)(3).  Any defendant also faces criminal liability if she uses threats or force and "willfully prevents, obstructs, impedes, or interferes with, or willfully attempts to prevent, obstruct, impede, or interfere with" court orders.  18 U.S.C. § 1509; *see also* 18 U.S.C. § 2237 (making it unlawful to "oppose, prevent, impede, intimidate or interfere with" a maritime investigation); 26 U.S.C. § 7212(a) (prohibiting obstructing or impeding the administration of the tax laws); *United States v. Brice*, 926 F.2d 925, 930-31 (9th Cir. 1991) (rejecting overbreadth and vagueness challenges to 41 C.F.R. § 101-20.305, regulation prohibiting impeding or disrupting government duties).  Section 231(a)(3) fits neatly within this framework.

Section 231(a)(3)'s terms are thus quite different from statutory terms that courts have found to be vague because they turn on subjective judgments of whether a defendant's conduct was "annoying" or "indecent," or those that depend on the victim's state of mind.  *See Nordean*, 579 F. Supp. 3d at 57.  "An ordinary person would have an intuitive understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement."  *McHugh*, 583 F. Supp. 3d at 27.

Lee's argument that Section 231(a)(3) is vague because it lacks an express scienter requirement or *mens rea* is also wrong.  The defendant ignores the fact that Section 231(a)(3) requires *intent*, which narrows its scope.  *See Williams*, 553 U.S. at 294 (focusing on scienter

requirement in finding that a statute was not overbroad); *McHugh*, 583 F. Supp. 3d 24-26 (finding that Section 231(a)(3) includes an intent requirement).  The statute requires proof that the "act" was done "to obstruct, impede, or interfere" with a law enforcement officer, *i.e.*, the defendant's purpose or intent in performing the "act" must be to obstruct, impede, or interfere.  *See Mechanic*, 854 F.2d at 854 (construing Section 231(a)(3) to include an intent requirement).

The court in *United States v. Riley Williams* reached the same result.  2022 WL 2237301. Judge Berman Jackson noted that "a *scienter* requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id*. at *7.  The court concluded that § 231(a)(3) "only criminalizes acts performed 'to obstruct, impede, or interfere with' a law enforcement officer," "in other words, the statute requires obstructive intent."  *Id. See also Nat'l Mobilization Comm. to End War in Viet Nam v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969) ("It is true that section 231(a)(3) does not specifically refer to intent, but it only applies to a person who 'commits or attempts to commit any act to obstruct, impede, or interfere' with firemen or law enforcement officers."); *Mechanic*, 454 F.2d at 854 (agreeing with *Foran* "that § 231(a)(3) must be construed to require intent").  And even if the statute lacked an express scienter requirement, courts, "generally interpret [] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Elonis v. United States*, 575 U.S. 723, 734 (2015) (citation omitted); *see also United States v. Cassel*, 408 F.3d 622, 634 (9th Cir. 2005) ("[E]xcept in unusual circumstances, we construe a criminal statute to include a *mens rea* element even when none appears on the face of the statute.").

Count One of the Superseding Indictment provides fair notice to the defendant of the conduct it punishes and is therefore not unconstitutionally vague.  This is why a number of judges in this District have rejected similar vagueness challenges to Section 231(a)(3).  *See e.g.*, *Mock*,

2023 WL 3844604, at *5; *Gossjankowski*, 2023 WL 130817, at *11-13; *Fischer*, 2022 WL 782413, at *2-3 (*rev'd on other grounds*); *Nordean*, 579 F. Supp. 3d at 57-58; *Bingert*, 605 F. Supp. 3d at 128-130; *McHugh*, 583 F. Supp. 3d at 26-28; *Williams*, 2022 WL 2237301, at *4-5.[5]

Lastly, Lee argues this Court and other courts cannot interpret Section 231(a)(3) to be constitutional if it is unconstitutional on its face. For the reasons set forth above, the statute is constitutional on its face. Therefore, defendant's "separation of powers" argument is moot.

## CONCLUSION

For the reasons stated herein, the Court should reject the defendant's motion to dismiss Count One, ECF No. 18.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ *Matthew E. Vigeant*
MATTHEW E. VIGEANT
Assistant United States Attorney
D.C. Bar No. 144722
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-2423
matthew.vigeant@usdoj.gov

ADAM M. DREHER
Assistant United States Attorney
Michigan Bar No. P79246
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-1706
adam.dreher@usdoj.gov

---

[5] Several courts outside this circuit have also rejected similar challenges to Section 231(a)(3). *See e.g.*, *Phomma*, 561 F. Supp. 3d at 1069-70; *United States v. Rupert*, 2021 WL 1341632, at *16-20 (D. Minn. Jan. 6, 2021); *Wood*, 2021 WL 3048448; and *Howard*, 2021 WL3856290.

<u>CERTIFICATE OF SERVICE</u>

On this nineteenth day of April, 2024, a copy of the foregoing was served on counsel of record for the defendant via the Court's Electronic Filing System (ECF).


By:     <u>/s/ Matthew E. Vigeant</u>
         Matthew E. Vigeant
         Assistant United States Attorney