**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No.: 1:23-cr-00368-TNM-1 |
| | : | |
| JUSTIN LEE | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT JUSTIN LEE'S PRETRIAL STATEMENT**

Justin Lee, defendant, by his attorney, submits his trial brief.  This brief is intended to focus on anticipated legal issues.

I.      **Due to a Circuit Split Concerning the Elements of 18 U.S.C. § 111, the Rule of Lenity Should Be Applied and the Conflict Resolved in the Defendant's Favor. This Means that the Defendant Cannot be Found Guilty unless He Attempted or Threatened to Injure the Officer, i.e., That He Committed -- at a Minimum -- a Simple Assault as Defined by the Common Law.**

As the defendant has pointed out previously to the Court, ECF# 32, there is an unresolved split in the circuits with respect to the elements of 18 U.S.C. § 111, which is charged in Count 2. *Compare United States v. Davis*, 690 F.3d 127, 134-135 (2d Cir. 2012); *United States v. Chapman*, 528 F.3d 1215, 1219-1220 (9th Cir. 2008); *United States v. Wolfname*, 835 F.3d 1214, 1218 (10th Cir. 2016) *with United States v. Briley*, 770 F.3d 267 (4th Cir. 2014); *United States v. Williams*, 602 F.3d 313 (5th Cir. 2010); *United States v. Gagnon*, 553 F.3d 1021 (6th Cir. 2009); *United States v. Stands Alone*, 11 F.4th 532 (7th Cir. 2021).  In simple terms, the former hold that the offense of common law assault is an element of any offense under § 111.  The latter hold that the acts of forcibly resisting, opposing, impeding, intimidating, or interfering do not require as an element of any offense under that a simple assault has to be committed as part of the act.

Defendant submits that the conflict requires this Court to invoke the rule that "'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *United States v. Bass*, 404 U.S. 336, 347 (1971)(*quoting Rewis v. United States*, 401 U.S. 808, 812 (1971)).   As Justice Scalia noted in *Bryan v. United States*, 524 U.S. 184, 141 L.Ed.2d 197, 214 (1998(*dissenting*):

> In our era of multiplying new federal crimes, there is more reason than ever to give this ancient canon of construction [the rule of lenity] consistent application by fostering uniformity in the interpretation of criminal statutes, it will reduce the occasions will have to produce judicial havoc by resolving in defendant's favor *a circuit court conflict regarding the substantive elements of a federal crime*, see, *e.g.*, *Bousley v. United States*, 523 U.S. , (1998)(*emphasis added*).

In the face of the circuit split and the resulting uncertainty as to the elements of § 111, the rule of lenity is an appropriate canon to be applied here. If applied, the course is clear. In order to find the defendant guilty of an offense under § 111 the Government must prove – at a minimum-- that Lee attempted or threatened to injure the officer, i.e., that he committed a simple assault.  At common law, a simple assault is "a crime, not involving touching, committed by either a willful attempt to inflict injury upon the person of another, or a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm."[1]  *Davis*, 690 F.3d at 135-136; *accord Chapman*, 528 F.3d at 1219-1220; *see also Wofname*, 835 F.3d at 1218, 1220.  *See also*, *USA v. Bruno Joseph Cua*, 21-cr-00107

---

[1] Lee submits that this definition of assault comports with the definition approved in in the District of Columbia circuit. In *United States v. Duran*, 96 F.3d 1495, 1509 (D.C. Cir. 1996), the Court cited with approval to the Model Penal Code's definition of assault, namely: "a person is guilty of [simple] assault if he (a) attempts to cause or purposely, knowingly or recklessly cause bodily injury to another; (b) negligently causes bodily injury to another with a deadly weapon; or (c) attempts by physical menace to put another in fear of serious bodily injury." In *United States v. Heid*, 904 F.2d 69, 71 (D.C. Cir. 1990) where a conviction under § 111 was reviewed, the Court held that the lower court "the jury was properly instructed on the elements of the crime. … The court carefully explained to the jury that while any of the several possible acts listed in section 111 ('assaults, resists, opposes, impedes, intimidates, or interferes') could form the basis for a conviction, it could only convict on a finding that force either had been used or threatened …. The court then defined 'forcibly' as the 'use of force, including the willful threat or attempt to inflict bodily harm." (*Quoting the record in the case*.)

3

RDM (D.D.C.) ECF# 288 February 22, 2023, p. 10 ("Applying the definition of 'assault' that the parties have agreed to for purposes of this proceeding, the simple-assault provision applies to an act that constitutes 'only' an attempt or threat to inflict injury upon someone else, when could with an apparent present ability to do so, that places another in reasonable apprehension of immediate bodily harm."

## II.    This Court's Construction of the Statute in the *McCaughey* Case Revisited.

The Government's trial brief, Sec. III, cites to this Court's decision in *United States v. Patrick McCaughey*, 21-cr-040 TNM (D.D.C. September 13, 2022), and points out that the Court rejected the same argument made by the defendant now.  In that case, this Court cited to the text of the statute and reasoned that Sec. 111(a)(1) refers to "acts [that] encompass forcible assaults," but that it "also cover forcible opposition, interference with and impeding officers." Transcript of Oral Ruling, *id*., ECF# 638, p. 12.  Placing reliance on the Fourth Circuit's decision in *United States v. Briley*, *supra*, and the Seventh Circuit's decision in *United States v. Stand Alone*, *supra*, the Court concluded. "Both circuits convincingly reason from the text of the statute that the verbs other than 'assault' carry through into the felony of Section 111(a)." The Court went on to make passing reference to "contrary authority from the Tenth Circuit" in the form of *United States v. Wolfname*, *supra*, but distinguished it on that ground because "that decision rests on binding precedent in that circuit on a prior version of the statute." ECF# 638, p. 13, line 12.

This Court's interpretation of the statute in *Patrick McCaughey* is contrary to statute's plain language and structure.

§ 111 reads as follows:

> **§111. Assaulting, resisting, or impeding certain officers or employees**
>
>   (a) In General.—Whoever-
>
>      (1) **forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person** designated in section 1114 of this title while engaged in or on account of the performance of official duties; or
>
>      (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,
>
>   shall, **where the acts in violation of this section constitute only simple assault,** be fined under this title or imprisoned not more than one year, or both, **and where such acts involve physical contact with the victim of that assault** or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.
>
>      (b) Enhanced Penalty.—Whoever, **in the commission of any acts described in subsection (a),** uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

In giving weight to each of the six verbs in §111(a)(1), this Court overlooked that those acts operate as a unit within §111's structure. Each verb has meaning; it simply takes the form of assaultive conduct. The structure of the statute makes clear that it sets an elemental floor with the misdemeanor offense by defining the six verbs in §111(a)(1) in terms of "simple assault," and then cross-references those acts, so defined, and draws them into each of the two felonies. The Court's mistake, however, was in thinking that all six verbs could trigger a conviction even if they were non-assaultive in nature. Instead, the misdemeanor offense in § 111 rises or falls on a showing of a "simple assault." Under §111(a), person is guilty of a misdemeanor if "*the actions in violation of this section* constitute *only simple assault*." 18 U.S.C. §111(a)(1)(*emphasis added*). Congress

made clear that it can take the form of generic assault or assaultive resistance, opposition, impediment, intimidation, or interference.

Congress built the felonies from the foundation of the misdemeanor of simple assault.  In the same sentence, after providing that the misdemeanor occurs when "*the acts* in violation of this section constitute only simple assault," Congress referred to the same assaultive acts with: "and where *such acts* involve …." §111(a)(1)(*emphasis added*). Congress further confirms that "the acts" and "such acts" refer only to *assaultive* acts, because it went on to describe a §111 victim as "the victim of *that assault*."  *Id*. (*emphasis added*).  "Such acts" tethers the misdemeanor to the felonies.  *See*, Black's Law Dictionary 1284 (5th ed. 1979)("'such' represents the object already particularized in terms which are not mentioned, and is a descriptive and relative word, referring to the last antecedent.").

When § 111(a) uses the words: "where the acts in violation constitute a simple assault," Congress did not define "simple assault."  It is a "settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms."  *United States v. Shabani*, 513 U.S. 10, 13 (1994); *see also*, *Moskal v. United States*, 498 U.S. 103, 114 (1990); *United States v. Turley*, 352 U.S. 407, 411 (1957).  Because "simple assault" is to be defined according to the common law definition, "*the acts*" extends to the non-assaultive verbs listed in §111(a)(1).  It follows that the statute's text and structure makes common-law simple assault a threshold requirement for each felony offense.

Finally, this Court's apparent criticism of the Tenth Circuit's decision in *Wolfname* should be reassessed.  This Court was correct that "decision rests on binding precedent in that circuit about a prior version of the statute." *Patrick McCaughey*, *supra*, ECF No. 638, p. 13, lines 11-12.  A reading of *Wolfname* shows that the Tenth Circuit in that case based its holding on the "new

statute," i.e., the statute that was amended in 2008.  *See*, *Wolfname*, 835 F.3d at 1220-21.  In addition, it is worth pointing out that in *Wolfname*, *id*., 1220, the government argued that "the 2008 amendment clarified 'that proof of an underlying technical assault is not required for a conviction on the statute's other five prohibited forms of forcible conduct.'" (*Citing the Govt's Brief*.)  The Tenth Circuit pointed out, *id*.: "We think that the amendment did just the opposite," and it appears that the court was right about that. The Tenth Circuit stated that "[e]ssentially, Congress amended § 111(a) to replace the phrase "in all other cases" with a slightly modified version of the definition in *Hathaway*." *Id*.  (The "binding precedent" to which this Court referred in *McGaughey* was *United States v. Hathaway*, 318 Fed 1001 (10th Cir. 2003).)  The court in *Wolfname* went on: "In short, the 2008 amendment didn't controvert our holding in *Hathaway*; instead, it effectively codified it. Thus, *Hathaway* remains good law.  And under *Hathaway*, assault is an element of any § 111(a)(1) offense." *Id*.  It should be noted that in *Patrick McCaughey* this Court did not otherwise distinguish or find fault with *Wolfname* or the Second and Ninth Circuits' decisions which also interpreted § 111 similarly to the Tenth Circuit.

It is further notable that in *United States v. Bruno Joseph Cua*, Cr 21-107 (RDM)(02-22-23) ECF# 288, Judge Moss ruled that the *Williams*, *Gagnon* and *Briley* decisions misconstrued §111(a) because "they read the phrase 'simple assault' and 'that assault' out of the first two clauses of the penalties provision"; and they ignored the admonition that where a criminal statute uses a common-law term without defining it, the established practice is to give that term its common-law meaning. Decision, p. 17.  The Judge stated that "under the plain terms of the statute as Congress wrote it, an assault is required under the simple-assault and physical-contact provisions, but not under the other-felony  provision—or, indeed, under the enhanced penalty provision." *Id*.  While Judge Moss got it right that all of the verbs are deemed to be assaultive in nature for purposes of

proving the misdemeanor and the felony of physical contact of § 111(a), the decision foundered on the felony where "such acts" are committed with an intent to commit another felony. It is illogical that Congress would make the physical contact felony dependent on proof of assaultive acts but not require the same proof with regard to the other felony which is contained in the same sentence.

The point of all this is to demonstrate the serious split in the circuits and the need to resolve the uncertainty in the statute by applying the rule of lenity.

### III.    Physical Contact

18 U.S.C. § 111(a) punishes "acts in violation of this section [which] constitute only simple assault," and where "*such acts* involve physical contact with the victim of the assault or in the intent to commit another felony." (*Emphasis added*.)   With respect to the physical contact prong, the Government's trial brief states it will present evidence at trial that "the thrown object involved physical contact." The operative word there is "involved," for the Government's trial brief then waters down the meaning of "physical contact" by arguing that it does not require *direct contact* with the body of the victim. *Govt. Brief*, p. 15.

The Government points to other January 6th defendants' cases who were found guilty of § 111 offense who apparently did not have direct physical contact with the officer-victim. It is difficult to distinguish these cases because the facts are not flushed out in the government's brief in detail. In the case of Matthew *DaSilva*, this Court found that DaSilva "made direct contact with Officer [S.]'s hand." *Govt. Brief*, p. 15. Those cases are not legal precedents, and it is sketchy at best what the facts of those cases are.

A police shield has a purpose and that is to protect the officer from physical contact. A thrown object which strikes a shield and does not make contact with the officer's body has done its job, preventing physical contact with the body of the officer.

7

The Government argues that by enacting § 111 Congress' policy was to protect officers.  It goes on to say that such policy would be frustrated "if an individual could escape criminal liability merely because the federal officer chose to equip himself with a shield."   Sending a man to prison where the evidence fails to prove each element of an offense is a worse policy by far.

The Government's trial brief points to the case of *United States v. Frizzi*, 491 F.2d 1231 (1st Cir. 1974), which affirmed a conviction under 18 U.S.C. § 111 for spitting in the face of an officer. The court in that case stated: "Although minor, it is an application of force to the body of the victim, a bodily contact highly offensive." *Id*., 1232.  Although the defendant argued that he was entitled to an acquittal for the reason that spitting in the face does not amount to a forcible assault, the court does not analyze the case in accordance with the common law definition of assault.  The defendant's stance is that common law assault requires proof of an attempt or threat to injure, and that the evidence of throwing an object of the kind thrown here will fall well short of proving an assault. More analogous to the present case is a spitting case in the State of New York.  In that case, a trial level court judge stated that spitting "does not satisfy New York's physical-injury requirement for an assault conviction, … ." *Hitchcock Plaza, Inc. v Clark*, 2003 Slip Op. 51524 (NY 12/19/2003) 88384/03.   18 U.S.C. § 111 is on par with the New York case, although it may be conceded that the *Frizzi* case did affirm the defendant's conviction under that federal statute to be sure.

## IV.   18 U.S.C. § 1752 Requires Knowledge of the Presence of a Secret Service Protectee  as well as Knowledge that His Conduct was Unlawful.

The defendant is charged in three counts with violating 18 U.S.C. § 1752. That section explicitly requires that the defendant acted "knowingly" in committing the offense.  As the Supreme Court stated in *Rehaif v. United States*, 139 S.Ct. 2191, 2196 (2019), "we 'ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word

"knowingly" as applying that word to each element.'" (*Quoting Flores-Figuera v. United States*, 556 U.S. 646, 650 (2009). This ties in with the fundamental principle that a person must have a culpable mental state regarding "each of the statutory elements that criminalizes his conduct." *United States v. X-Citement Video, Inc.*, 513 U.S.64, 72 (1994).

Count Three of the indictment alleges that the defendant "did knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted grounds within the United States Capitol and its grounds, where the Vice President is or will be temporarily visiting, without lawful authority to do so."  Counts Four and Five also allege similarly offense under 18 U.S.C. § 1752 the defendant violated the statute by reason of committing prohibited acts within "posted, cordoned-off or otherwise restricted areas … where the Vice President was and would be temporarily visiting."

It follows that one of the elements the government must prove is that Lee knew that the Vice President is or will be visiting the grounds.

The member of this Court now presiding in this case has decided that the government is not required to prove such knowledge on the part of the accused under § 1752. *See*, *United States v. Griffin*, No. 21-cr-92 (TNM), ECF No. 106 (D.D.C. Mar. 22, 2022) (McFadden, J.).  Although certainly not binding, the defendant respectfully wishes to draw the Court's attention to the decisions made by other judges in this District which have come to the opposite conclusion after *Griffin*. *See* Verdict Tr. at 4, *United States v. Samsel*, No. 21-cr-537 (JMC) (D.D.C. Feb. 2, 2024) (Cobb, J.); *United States v. Groseclose*, No. 21-cr-311 (CRC), 2024 WL 68248, at *9 (D.D.C. Jan. 5, 2024) (Cooper, J.); *United States, v. Elizalde*, No. 23-cr-170 (CJN), 2023 WL 8354932, at *7 (D.D.C. Dec. 1, 2023) (Nichols, J.); *United States v. Hostetter*, No. 21-cr-392 (RCL), 2023 WL 4539842, at *4 (D.D.C. July 13, 2023) (Lamberth, J.).  Furthermore, the *Griffin* decision is

Case 1:23-cr-00368-TNM   Document 41   Filed 08/16/24   Page 10 of 11

on appeal to the United States Court of Appeals for the District of Columbia circuit. Most respectfully, the Court is requested to re-evaluate its position.

The defendant asserts that in the circumstances of this case the *mens rea* requirement must include knowledge that one is violating the law which the indictment charges. In *Elonis v. United States*, 575 U.S. 723, (2015) the Court stated: "When interpreting federal criminal statutes that are silent on the required mental state, we read into the statute "only that mens rea which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" (*Quoting United States v. X-Citement Video*, 513 U.S. 64, 72 (1994). In this case, thousands of people went on to the grounds of the Capitol in the innocent belief that they had a First Amendment right to do so. They were right. The D.C. Circuit stated recently: "We have long recognized that the Capitol grounds – a series of lawns, only partially walled, surrounding the Capitol buildings – as a traditional public forum." *John Maron Nassif v. United States*, U.S. Court of Appeals for the D.C. Cir., No. 23-3069, 04-29-24, p. 9 *(citing Lederman v. United States*, 291 F.3d 36, 46 (D.C. Cir. 2002). *See*, *Jeanette Rankin Brigade v. Chief of Capitol Police*, 342 F.Supp. 575, 584 (D.D.C. (three judge panel), *aff'd*, 409 U.S. 972 (1972)("Nor is the primary purpose for which the Capitol was designed – legislating—incompatible with the existence of all parades, assemblages, or processions which may take place on those grounds."). Persons who entered Capitol grounds on January 6th were entitled to place faith is this long-tradition that the Capitol grounds was a place for speech, assembly and petitioning for redress of grievances. Many innocent minded persons that day had no inkling that they were going into "restricted" grounds or knowledge that their entry into such places was illegal under § 1752. If we are to achieve the goal of separating wrongful conduct from "otherwise innocent conduct," it is not enough for the government to prove that the person knowingly entered a place which the government alleges

were "restricted grounds" if that person has no real understanding why the area is "restricted" or

what that means.  This requires some knowledge of the statute. Proof of "guilty knowledge" or

"blameworthy in mind" is necessary to satisfy the *mens rea* element of the offense under the

unique circumstances present here in which persons innocently believed that they were on

Capitol grounds to exercise their First Amendment rights .  *Elonis*, 575 U.S. at 734.  This requires

in this instance proof of knowledge that one's conduct is illegal under the statute.


　　　　　　　　　　　　　　　 /s/ *Terrell N. Roberts, III*
　　　　　　　　　　　　　　　Terrell N. Roberts, III
　　　　　　　　　　　　　　　Bar ID No. 965061
　　　　　　　　　　　　　　　*Attorney for Defendant*
　　　　　　　　　　　　　　　6801 Kenilworth Avenue, Suite 202
　　　　　　　　　　　　　　　Riverdale, Maryland 20737
　　　　　　　　　　　　　　　(301) 699-0764
　　　　　　　　　　　　　　　(301) 699-8706 Fax
　　　　　　　　　　　　　　　TRoberts@robertsandwood.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Defendant's Pretrial Statement was electronically
filed on May 9, 2024, via the CM/ECF File & Serve system, and an electronic copy was e-served
on:

Adam Michael Dreher, Esq. & Matthew E. Vigeant, Esq.
United States Attorney's Office for the District of Columbia
601 D Street, NW
Washington, D.C. 20053


　　　　　　　　　　　　　　　 /s/ *Terrell N. Roberts, III*
　　　　　　　　　　　　　　　Terrell N. Roberts, III