IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No.: 1:23-cr-00368-TNM-1 |
| | : | |
| JUSTIN LEE | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT JUSTIN LEE'S AMENDED PRETRIAL STATEMENT**

Justin Lee, defendant, by his attorney, submits his trial brief.  This brief is intended to focus on anticipated legal issues.

I.      **Due to a Circuit Split Concerning the Elements of 18 U.S.C. § 111, the Rule of Lenity Should Be Applied and the Conflict Resolved in the Defendant's Favor. Applying that Canon, the Defendant Cannot be Found Guilty unless He Committed -- at a Minimum -- a Simple Assault at Common Law.**

As the defendant has pointed out previously, ECF# 32, there is an unresolved split in the circuits with respect to the elements of 18 U.S.C. § 111.  *Compare United States v. Davis*, 690 F.3d 127, 134-135 (2d Cir. 2012); *United States v. Chapman*, 528 F.3d 1215, 1219-1220 (9th Cir. 2008); *United States v. Wolfname*, 835 F.3d 1214, 1218 (10th Cir. 2016) *with United States v. Briley*, 770 F.3d 267 (4th Cir. 2014); *United States v. Williams*, 602 F.3d 313 (5th Cir. 2010); *United States v. Gagnon*, 553 F.3d 1021 (6th Cir. 2009); *United States v. Stands Alone*, 11 F.4th 532 (7th Cir. 2021). In simple terms, the former hold that common law assault is an element of any offense under § 111.  The latter hold that the acts of forcibly resisting, opposing, impeding, intimidating, or interfering do not require simple assault as an element of the offense.

A split in the circuits concerning the interpretation of a federal criminal statute warrants invoking the rule that an "'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *United States v. Bass*, 404 U.S. 336, 347 (1971)(*quoting Rewis v. United States*,

401 U.S. 808, 812 (1971)).   As Justice Scalia noted in *Bryan v. United States*, 524 U.S. 184, 141

L.Ed.2d 197, 214 (1998(*dissenting*):

> In our era of multiplying new federal crimes, there is more reason than ever to give this ancient canon of construction [the rule of lenity] consistent application by fostering uniformity in the interpretation of criminal statutes, it will reduce the occasions will have to produce judicial havoc by resolving in defendant's favor *a circuit court conflict regarding the substantive elements of a federal crime*, *see*, *e.g.*, *Bousley v. United States*, 523 U.S. , (1998)(*emphasis added*).

If the rule of lenity is applied, the course is clear. In order to find the defendant guilty of an

offense under § 111 the Government must prove – at a minimum-- that Lee attempted or threatened

to injure the officer, i.e., that he committed a simple assault.  At common law, a simple assault is

"a crime, not involving touching, committed by either a willful attempt to inflict injury upon the

person of another, or a threat to inflict injury upon the person of another which, when coupled with

an apparent present ability, causes a reasonable apprehension of immediate bodily harm."[1]  *Davis*,

690 F.3d at 135-136; *accord Chapman*, 528 F.3d at 1219-1220; *see also Wofname*, 835 F.3d at

1218, 1220.  *See also*, *USA v. Bruno Joseph Cua*, 21-cr-00107 RDM (D.D.C.) ECF# 288 February

22, 2023, p. 10 ("Applying the definition of 'assault' that the parties have agreed to for purposes

of this proceeding, the simple-assault provision applies to an act that constitutes 'only' an attempt

or threat to inflict injury upon someone else, when could with an apparent present ability to do so,

that places another in reasonable apprehension of immediate bodily harm.")

---

[1] Lee submits that this definition of assault comports with the definition approved in in the District of Columbia circuit. In *United States v. Duran*, 96 F.3d 1495, 1509 (D.C. Cir. 1996), the Court cited with approval to the Model Penal Code's definition of assault, namely: "a person is guilty of [simple] assault if he (a) attempts to cause or purposely, knowingly or recklessly cause bodily injury to another; (b) negligently causes bodily injury to another with a deadly weapon; or (c) attempts by physical menace to put another in fear of serious bodily injury." In *United States v. Heid*, 904 F.2d 69, 71 (D.C. Cir. 1990) where a conviction under § 111 was reviewed, the Court held that the lower court "the jury was properly instructed on the elements of the crime. … The court carefully explained to the jury that while any of the several possible acts listed in section 111 ('assaults, resists, opposes, impedes, intimidates, or interferes') could form the basis for a conviction, it could only convict on a finding that force either had been used or threatened …. The court then defined 'forcibly' as the 'use of force, including the willful threat or attempt to inflict bodily harm." (*Quoting the record in the case*.)

II.     **This Court's Previous Construction of the Statute is Contrary to the Plain Language and Structure of the Statute and Ignores the Common Law Definition of Assault.**

The Government's trial brief, Sec. III, cites to this Court's decision in *United States v. Patrick McCaughey*, 21-cr-040 TNM (D.D.C. September 13, 2022) and points out that the Court rejected the same argument made by the defendant now.  The government is content to cite the case and move on.  Lee submits that is not enough.

In *Patrick McCaughey*, this Court reasoned from the text of the statute that Sec. 111(a)(1) refers to "acts [that] encompass forcible assaults," but that they "also cover forcible opposition, interference with and impeding officers." Transcript of Oral Ruling, *id*., ECF# 638, p. 12. It placed reliance on the Fourth Circuit's decision in *United States v. Briley*, *supra*, and the Seventh Circuit's decision in *United States v. Stand Alone*, *supra*, and concluded: "Both circuits convincingly reason from the text of the statute that the verbs other than 'assault' carry through into the felony of Section 111(a)." It went on to make passing reference to "contrary authority from the Tenth Circuit," i.e., *United States v. Wolfname*, *supra*, and distinguished that case on the grounds "that decision rests on binding precedent in that circuit on a prior version of the statute." ECF# 638, p. 13, line 12.

This Court's interpretation is contrary to statute's plain language and structure.

§ 111 reads as follows:

§111. Assaulting, resisting, or impeding certain officers or employees

(a) IN GENERAL.—Whoever-

(1) **forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person** designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

(2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,

shall, **where the acts in violation of this section constitute only simple assault,** be fined under this title or imprisoned not more than one year, or both, **and where such acts involve physical contact with the victim of that assault** or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

(b) ENHANCED PENALTY.—Whoever, **in the commission of any acts described in subsection (a),** uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

In giving weight to each of the six verbs in §111(a)(1), the Court overlooked that the acts represented by those verbs operate as a unit within §111's structure. Each verb has meaning; it simply takes the form of assaultive conduct. The structure of the statute makes clear that it sets an elemental floor with the misdemeanor offense by defining the six verbs in §111(a)(1) in terms of "simple assault," and then cross-references those acts, so defined, and draws them into each of the two felonies. Respectfully, the Court's mistake was in thinking that all six verbs could independently trigger a conviction. This is clearly not the case because the misdemeanor offense in § 111 rises or falls on a showing of a "simple assault." It is indisputable by the plain language of §111(a) that a person can be guilty of a misdemeanor only if "*the actions in violation of this section* constitute *only simple assault.*" 18 U.S.C. §111(a)(1)(*emphasis added*). In other words, the

plain language of the statute makes clear that the misdemeanor can take the form of either generic assault or *assaultive* resistance, opposition, impediment, intimidation, or interference.

It is equally clear from the plain language and structure of the statute that Congress built the felonies from the foundation of the misdemeanor of simple assault.  In one sentence, after providing that the misdemeanor occurs when "*the acts* in violation of this section constitute only simple assault," Congress referred to the same assaultive acts with: "and where *such acts* involve …." §111(a)(1)(*emphasis added*). Congress further confirms that "the acts" and "such acts" refer only to *assaultive* acts, because it went on to describe a §111 victim as "the victim of *that assault*." *Id*. (*emphasis added*).  "Such acts" tethers the misdemeanor to the felonies.  *See*, Black's Law Dictionary 1284 (5th ed. 1979)("'such' represents the object already particularized in terms which are not mentioned, and is a descriptive and relative word, referring to the last antecedent.").

When § 111(a) uses the words: "where the acts in violation constitute a simple assault," Congress did not define "simple assault."  It is a "settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms."  *United States v. Shabani*, 513 U.S. 10, 13 (1994); *see also*, *Moskal v. United States*, 498 U.S. 103, 114 (1990); *United States v. Turley*, 352 U.S. 407, 411 (1957).  Because "simple assault" is to be defined according to the common law definition, that meaning extends to "*the acts*" which include each verb listed in §111(a)(1).  Thus, the statute's text and structure make common-law simple assault a threshold requirement for each felony offense.

Finally, the Tenth Circuit's decision in *Wolfname*  does not rest "on binding precedent in that circuit about a prior version of the statute."  *Patrick McCaughey*, *supra*, ECF No. 638, p. 13, lines 11-12.  Instead, the Tenth Circuit rested its decision on the "new statute," i.e., the statute that was amended in 2008.  *See*, *Wolfname*, 835 F.3d at 1220-21. It is worth noting that in *Wolfname*,

*id*., 1220, the government argued that "the 2008 amendment clarified 'that proof of an underlying technical assault is not required for a conviction on the statute's other five prohibited forms of forcible conduct.'" (*Citing the Govt's Brief*.)  As the Tenth Circuit pointed out, *id*.: "We think that the amendment did just the opposite." The court stated: "[e]ssentially, Congress amended § 111(a) to replace the phrase "in all other cases" with a slightly modified version of the definition in *Hathaway*." *Id*.  (*United States v. Hathaway*, 318 Fed 1001 (10th Cir. 2003) is the "binding precedent" to which this Court referred in *McGaughey*.)  *Wolfname* went on: "In short, the 2008 amendment didn't controvert our holding in *Hathaway*; instead, it effectively codified it. Thus, *Hathaway* remains good law.  And under *Hathaway*, assault is an element of any § 111(a)(1) offense." *Id*.  Finally, in *Patrick McCaughey,* this Court did not distinguish the holdings of the Second and Ninth Circuits which interpreted § 111 similarly.

Finally, in *United States v. Bruno Joseph Cua*, Cr 21-107 (RDM)(02-22-23) ECF# 288, Judge Moss ruled that the *Williams*, *Gagnon* and *Briley* decisions – the 5th, 6th and 4th Circuits-- misconstrued §111(a) because "they read the phrase 'simple assault' and 'that assault' out of the first two clauses of the penalties provision"; and they ignored the admonition that where a criminal statute uses a common-law term without defining it, the established practice is to give that term its common-law meaning. Decision, p. 17.  The Judge stated that "under the plain terms of the statute as Congress wrote it, an assault is required under the simple-assault and physical-contact provisions, but not under the other-felony provision—or, indeed, under the enhanced penalty provision." *Id*.  While Judge Moss is right that all of the verbs are deemed to be assaultive in nature for purposes of proving the misdemeanor and the felony of physical contact of § 111(a), the decision foundered when it did not employ the same reasoning to the intent to commit another felony offense.  It is illogical that Congress would define the six verbs as one unit with respect to

one felony and not the other, especially where both felonies are joined at the hip in the same sentence of the statute.

### III.     Physical Contact

18 U.S.C. § 111(a) punishes "acts in violation of this section [which] constitute only simple assault," and where "such acts involve physical contact with the victim of the assault." The Government's trial brief asserts that it will present evidence at trial that "the thrown object involved physical contact."  Lee submits that the Government's trial brief waters down the meaning of "physical contact" by arguing that it does not require *direct contact* with the body of the victim. *Govt. Brief*, p. 15.

The Government points to other January 6th defendants' cases who were found guilty of § 111 offense where there was no physical contact with the officer-victim.  It is difficult to distinguish these cases because all the facts are not recited in the government's brief.  In the case of *Matthew DaSilva*, this Court found that DaSilva "made direct contact with Officer [S.]'s hand." *Govt. Brief*, p. 15. It is not clear what the nature of that contact was or what DaSilva's intention was at the time. These cases are not legal precedents, and reliance on them is risky when it comes to factual similarities with a case presently before the Court for decision.

The Government argues that by enacting § 111 Congress' policy is to protect officers.  It laments that "an individual [should not] …escape criminal liability merely because the federal officer chose to equip himself with a shield."  A police shield has a purpose, and that is to protect the officer from physical contact.  A thrown object which strikes a police shield and does not make contact with the officer's body has done its job, preventing physical contact with the body of the officer.  It would be bad policy to send a man to prison where the evidence fails to prove each element of an offense.

The Government's trial brief points to the case of *United States v. Frizzi*, 491 F.2d 1231 (1st Cir. 1974), which affirmed a conviction under 18 U.S.C. § 111 for spitting in the face of an officer. The court in that case stated: "Although minor, it is an application of force to the body of the victim, a bodily contact highly offensive." *Id.*, 1232.  Although the defendant argued that he was entitled to an acquittal for the reason that spitting in the face does not amount to a forcible assault, the court does not analyze the case in accordance with the common law definition of assault.  The defendant's stance is that common law assault requires proof of an attempt or threat to injure, and that the evidence of throwing an object of the kind thrown here will fall well short of proving an assault. More analogous to the present case is a spitting case in the State of New York.  In that case, a trial level court judge stated that spitting "does not satisfy New York's physical-injury requirement for an assault conviction, … ." *Hitchcock Plaza, Inc. v Clark*, 2003 Slip Op. 51524 (NY 12/19/2003) 88384/03.   18 U.S.C. § 111 is on par with the New York case, although it may be conceded that the *Frizzi* case did affirm the defendant's conviction under that federal statute to be sure.

**IV.     18 U.S.C. § 1752's Knowledge Requirements Must Be Met.**

The defendant is charged in three counts with violating 18 U.S.C. § 1752. That section explicitly requires that the defendant acted "knowingly" in committing the offense.  As the Supreme Court stated in *Rehaif v. United States*, 139 S.Ct. 2191, 2196 (2019), "we 'ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word "knowingly" as applying that word to each element.'" (*Quoting Flores-Figuera v. United States*, 556 U.S. 646, 650 (2009). This ties in with the fundamental principle that a person must have a culpable mental state regarding "each of the statutory elements that criminalizes his conduct." *United States v. X-Citement Video, Inc.*, 513 U.S.64, 72 (1994).

Count Three of the indictment alleges that the defendant "did knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted grounds within the United States Capitol and its grounds, where the Vice President is or will be temporarily visiting, without lawful authority to do so."   Counts Four and Five also allege prohibited acts within "posted, cordoned-off or otherwise restricted areas … where the Vice President was and would be temporarily visiting."

It follows that the government must prove is that Lee knew that the Vice President is or will be visiting the grounds.  More than two years ago, the member of this Court now presiding in this case decided that the government was not required to prove such knowledge on the part of the accused under § 1752. *See*, *United States v. Griffin*, No. 21-cr-92 (TNM), ECF No. 106 (D.D.C. Mar. 22, 2022) (McFadden, J.). Although certainly not binding, the defendant respectfully draws the Court's attention to the decisions made by other judges in this District which have come to the opposite conclusion after *Griffin*. *See* Verdict Tr. at 4, *United States v. Samsel*, No. 21-cr-537 (JMC) (D.D.C. Feb. 2, 2024) (Cobb, J.); *United States v. Groseclose*, No. 21-cr-311 (CRC), 2024 WL 68248, at *9 (D.D.C. Jan. 5, 2024) (Cooper, J.); *United States, v. Elizalde*, No. 23-cr-170 (CJN), 2023 WL 8354932, at *7 (D.D.C. Dec. 1, 2023) (Nichols, J.); *United States v. Hostetter*, No. 21-cr-392 (RCL), 2023 WL 4539842, at *4 (D.D.C. July 13, 2023) (Lamberth, J.).   Furthermore, the *Griffin* decision is on appeal to the United States Court of Appeals for the District of Columbia circuit. The Court is requested to re-evaluate its position.

The defendant asserts that under the circumstances of this case the *mens rea* requirement must include a knowledge that one is violating the law.   In *Elonis v. United States*, 575 U.S. 723, (2015) the Court stated: "When interpreting federal criminal statutes that are silent on the required mental state, we read into the statute "only that mens rea which is necessary to separate

wrongful conduct from 'otherwise innocent conduct.'" (*Quoting United States v. X-Citement Video*, 513 U.S. 64, 72 (1994). In this case, thousands of people went on to the grounds of the Capitol in the innocent belief that they had a First Amendment right to do so. They were right. The D.C. Circuit stated recently: "We have long recognized that the Capitol grounds – a series of lawns, only partially walled, surrounding the Capitol buildings – as a traditional public forum." *John Maron Nassif v. United States*, U.S. Court of Appeals for the D.C. Cir., No. 23-3069, 04-29-24, p. 9 *(citing Lederman v. United States*, 291 F.3d 36, 46 (D.C. Cir. 2002). *See, Jeanette Rankin Brigade v. Chief of Capitol Police*, 342 F.Supp. 575, 584 (D.D.C. (three judge panel), *aff'd*, 409 U.S. 972 (1972)("Nor is the primary purpose for which the Capitol was designed – legislating—incompatible with the existence of all parades, assemblages, or processions which may take place on those grounds."). Persons who entered Capitol grounds on January 6th were entitled to place faith is this long-tradition that the Capitol grounds was a place for speech, assembly and petitioning for redress of grievances. Many innocent minded persons that day had no inkling that they were going into "restricted" grounds or knowledge that their entry into such places was illegal under § 1752. If we are to achieve the goal of separating wrongful conduct from "otherwise innocent conduct," it is not enough for the government to prove that the person knowingly entered a place which the government alleges were "restricted grounds" if that person has no real understanding why the area is "restricted" or what that means. This requires some knowledge of the statute. Proof of "guilty knowledge" or "blameworthy in mind" is necessary to satisfy the *mens rea* element of the offense under the unique circumstances present here in which persons innocently believed that they were on Capitol grounds to exercise their First Amendment rights . *Elonis*, 575 U.S. at 734. This requires in this instance proof of knowledge that one's conduct is illegal under the statute.

  /s/ *Terrell N. Roberts, III*
Terrell N. Roberts, III
Bar ID No. 965061
*Attorney for Defendant*
6801 Kenilworth Avenue, Suite 202
Riverdale, Maryland 20737
(301) 699-0764
(301) 699-8706 Fax
TRoberts@robertsandwood.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Defendant's Amended Pretrial Statement was electronically filed on August 19, 2024, via the CM/ECF File & Serve system, and an electronic copy was e-served on:

Adam Michael Dreher, Esq. & Matthew E. Vigeant, Esq.
United States Attorney's Office for the District of Columbia
601 D Street, NW
Washington, D.C. 20053


  /s/ *Terrell N. Roberts, III*
Terrell N. Roberts, III

11