**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No.: 1:23-cr-00368-TNM-1 |
| | : | |
| JUSTIN LEE | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT JUSTIN LEE'S MOTION FOR JUDGMENT OF ACQUITTAL**

Justin Lee, defendant, by his attorney, moves the Court pursuant to Rule 29 for judgment of acquittal with respect to Counts One, Two, Three, Four, and Six on the grounds that the evidence is insufficient to sustain a conviction on each of those counts.

　/s/ *Terrell N. Roberts, III*　
Terrell N. Roberts, III
Bar ID No. 965061
*Attorney for Defendant*
6801 Kenilworth Avenue, Suite 202
Riverdale, Maryland 20737
(301) 699-0764
(301) 699-8706 Fax
TRoberts@robertsandwood.com

# Table of Contents

I.    THE EVIDENCE IS INSUFFICIENT TO SUPPORT A CONVICTION UNDER COUNT ONE, INTERFERING WITH A LAW ENFORCEMENT OFFICER.......................................... 3

   A.    The Conviction for 18 U.S.C. § 231 (a)(3) is Inconsistent with the First Amendment....... 3

      1.    In Tossing a Smoke Bomb Engaged in Protected Speech under the First Amendment. 3

      2.    Sec. 231(a)(3) Relates to Suppression of Free Expression ............................................ 4

      3.    § 231(a)(3)'s Legislative History Reveals A Content-Based Purpose.......................... 6

      4.    § 231(a)(3) Fails Under Strict Scrutiny Because The Burdens It Imposes On Protected Expression Are Only Remotely Connected To Any Potential Federal Interest. .................... 8

   B.    Assuming that the First Amendment is not in Play, the Evidence was Not Sufficient to Sustain a Conviction for Violating § 231(a)(3)............................................................................. 9

II.    THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION ON COUNT TWO, WHICH CHARGED OFFENSES UNDER 18 U.S.C. SEC. 111(A)(1). .......................... 13

   A.    Assault is a Required Element of an Offense under § 111(a)(1). ..................................... 13

   B.    The Government Failed to Produce Sufficient Evidence that the Defendant's Forcible Acts Involved Physical Contact............................................................................................................. 15

   C.    There was Insufficient Evidence to Prove that the Victim of the Assault Assisted a Specific Federal Law Enforcement Officer or to Show What the Duties that Officer  Performed at the Time. ...................................................................................................................................................... 16

III.    THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN CONVICTIONS UNDER 18 U.S.C. § 1752(A)(1) AND (A)(2)................................................................................................. 16

IV.    THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR COUNT SIX, DISORDERLY OR DISRUPTIVE CONDUCT ON CAPITOL GROUNDS. .................... 21

CERTIFICATE OF SERVICE ...................................................................................................... 22

<u>**MEMORANDUM IN SUPPORT OF THE DEFENDANT'S**</u>
<u>**MOTION FOR JUDGMENT OF ACQUITTAL**</u>

**I.    THE EVIDENCE IS INSUFFICIENT TO SUPPORT A CONVICTION UNDER COUNT ONE, INTERFERING WITH A LAW ENFORCEMENT OFFICER.**

    **A.    The Conviction for 18 U.S.C. § 231 (a)(3) is Inconsistent with the First Amendment.**

        **1.    In Tossing a Smoke Bomb Engaged in Protected Speech under the First Amendment.**

Sec. 231(a)(3)'s broad language reaches "any act" that "obstructs, impedes or interferes" with a law enforcement officer's performance of duties incident to a "civil disorder." In this case, it swept expressive conduct with it, making the defendant's conviction inconsistent with the First Amendment.

"The First Amendment literally forbids only the abridgment of 'speech,' but we have long recognized that its protection does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989)(*quoting Spence v. Washington*, 418 U.S. 405, 409 (1974). Conduct may be "imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Texas v. Johnson*, *supra* (flag burning constituted "expressive conduct" under the First Amendment). *See also, Virginia v. Black*, 538 U.S. 343, 365-66 (2003) ("[S]ometimes the cross burning is a statement of ideology, a symbol of group solidarity"); *Clark v. Cmty. for Creative Non- Violence*, 468 U.S. 288, 293 (1984) (assuming that "sleeping in connection with the demonstration is expressive conduct protected to some extent by the First Amendment."). Determining whether particular conduct possesses sufficient communicative elements to bring the First Amendment in play turns on whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Id.*, 410-411. In the present case, the evidence satisfies both elements of this test.

The defendant testified that he intended to convey a particular message by tossing a small smoke bomb in the direction of a group of police officers defending a tunnel at the U.S. Capitol located at the lower west terrace level. He did so in protest because he objected to the manner in which the police discharged their duties on January 6. He saw munitions and tear gas used against people on Capitol grounds indiscriminately and injured innocent persons. He also saw the police push elderly people down stairs. In the context of the events of January 6th, this message would have been understood by the persons who viewed it.

## 2.    Sec. 231(a)(3) Relates to Suppression of Free Expression

Having determined that defendant engaged in expressive conduct, we turn to whether § 231(a)(3) is related to the suppression of free expression. *See*, *Texas v. Johnson*, *supra*, 403; *United States v. O'Brien*, 391 U.S. 367, 377 (1968); *Spence*, *supra*, at 414, n. 8. "Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). *See also*, *City of Austin v. Reagan Nat'l Adver. of Austin*, 142 S.Ct. 1464, 1471 (2022)(*applying Reed, but clarifying its holding*). "When the government restricts speech based on its content, a court will subject the restriction to strict scrutiny." *In re Nat'l Sec. Letter*, 863 F.3d 1110, 1121 (9th Cir. 2017) (citing *Reed*, 576 U.S. at 162). "A speech regulation targeted at specific subject matter is content-based even if it does not discriminate among viewpoints within that subject matter." *Reed*, 576 U.S. at 169. By contrast, viewpoint discrimination is a "more blatant" and "egregious form of content discrimination" which "targets not subject matter, but particular views taken by speakers on a subject." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).

In *Reed*, the Supreme Court clarified that "strict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based." 576 U.S. at 166. *Reed* requires a court to inquire separately (1) "whether the law is content neutral on

its face"; and (2) whether "the purpose and justification for the law are content based." *Id*. at 165-166. A court "must evaluate each question before it concludes that the law is content neutral and thus subject to a lower level of scrutiny." *Id*. at 166. "If there is evidence that an impermissible purpose or justification underpins a facially content-neutral restriction ... that restriction may be content-based." *City of Austin*, *supra*, at 1475(*quoting Reed*, 576 U.S. at 164).

By its own terms, § 231(a)(3) authorizes criminal penalties for "any act," whether it be speech or expressive conduct, intended merely to "interfere with" an officer engaged in the performance of duty. This language is broad enough to include speech or expressive conduct which criticizes or challenges the manner in which police officers discharged their duties. In *Hill*, the Supreme Court considered a First Amendment overbreadth challenge to a law that similarly made it a crime to "in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty." 482 U.S. at 455. The defendant in *Hill* shouted at police officers in an admitted attempt to divert the officer away from a friend. Id. at 453-43. The Court concluded that the statute reached "verbal criticism and challenge directed at police officers," *id*. at 461, conferring authority on those officers "to make arrests selectively *on the basis of the content of the speech*," *id*. at 465 n.15 (emphasis added).

In *McCoy*, the district court relied on *Hill*'s reasoning to invalidate a law even more similar to § 231(a)(3). 929 F. Supp. 2d at 551. The city ordinance at issue made it "unlawful for any person to interfere with or molest a police officer in the lawful discharge of his duties." *Id*. at 546. The court's holding was based on vagueness and overbreadth: the law was not limited to "*physical* interference or molestation" because those terms were left undefined. *Id*. at 549 (emphasis in original). Thus, as in *Hill*, the court found the ordinance permitted police to "make arrests selectively on the basis of the content of the speech[.]" *Id*. at 551 (internal quotation marks omitted)

(quoting *Hill*, 482 U.S. at 465 n.15).

As in *Hill* and *McCoy*, § 231(a)(3) singles out forms of expression that contain messages that criticize, challenge, insult, or object to the actions of law enforcement officers. Thus, it is a content-based speech regulation. *Reed*, 576 U.S. at 163. The statute's terms "any act" and "interfere" are left unqualified and undefined, thereby allowing arrest and prosecution of one whose words have sufficiently provoked the anger of a police officer so as to even briefly "interfere" with his duties. In that way, § 231(a)(3) restricts speech "based on the message the speaker conveys[.]" *Reed*, 576 U.S. at 163.

### 3.    § 231(a)(3)'s Legislative History Reveals A Content-Based Purpose.

The First Amendment generally prevents the government from proscribing speech and expressive conduct because of disapproval of ideas. *See R.A.V. v. City of St. Paul, Minn*., 505 U.S. 377, 382 (1992) ("The First Amendment generally prevents government from proscribing speech or even expressive conduct because of disapproval of the ideas expressed."). The Supreme Court in *Reed* recognized a "category of laws that, though facially content neutral, will be considered content-based regulations of speech" by virtue of having been "adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Reed*, 576 U.S. at 164 (*quoting Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). The First Amendment therefore requires courts to inspect a law's legislative background for "animus toward the ideas" regulated. *Id*. at 165. If the law was "adopted by the government 'because of disagreement with the message [the speech] conveys," then, "like those [laws] that are content based on their face, [it] must also satisfy strict scrutiny." *Id*. at 164-65 (*quoting Ward*, supra). Section 231(a)(3)'s content-based purpose brings it within that category of laws.

The legislative history of § 231(a)(3) shows that it was enacted to suppress messages in support of civil rights and racial justice for Black Americans. During hearings, Senator Russell

Long explained the law's content-based purpose clearly and repeatedly. He intended his amendment to nullify constitutional protections that the civil rights bill's hate crime provision promised to extend to Black Americans who speak out about racial injustice.[1] (114 Cong. Rec. 1287-1294 (Jan. 29, 1968)). It was Dr. Martin Luther King Jr., Senator Long argued, whose "inflammatory letter" from the Birmingham jail, had "in large measure brought on all these riots and presented the need for action." *Id*. at 8 (114 Cong. Rec. 1294). Any message in support of civil rights for Black Americans was liable, in Senator Long's estimation, to incite a riot. As a solution, the Civil Obedience Act would deter individuals from "stirring up our fine citizens . . . and giving the wrong idea that everyone is trying to do something evil to them because they are of a different race," (114 Cong. Rec. 544 (Jan. 22, 1968)), and from "accusing all the American people of being a bunch of murderers and assassins" or "international criminals, which we are not," (114 Cong. Rec. 1817 (Feb. 1, 1968)).

Senator Long's articulated purpose is inconsistent with the "freedoms guaranteed by the First and Fourteenth Amendments" because the targeted speech is not "directed to inciting or producing imminent lawless action and is [not] likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 448 (1969). In *NAACP v. Claiborne Hardware Co.*, the Court recognized constitutional protections for associational speech aimed at collective action. 458 U.S. 886, 907-08 (1982). *Claiborne* involved a civil injunction brought by white merchants against the NAACP for a business boycott to achieve equal treatment of Black patrons. The state court had upheld judgment against the NAACP based in part on threatening statements and violent acts by individual boycotters. But the Supreme Court reversed, articulating broad protection for speech

---

[1] Senator Russell B. Long of Louisiana was the author and primary proponent of the Civil Obedience Act, which became "known popularly as the Long amendment." (House Committee on Rules, *Consideration of H.R. 2516: Disagreeing to Senate Amendments and Sending the Bill to Conference*, April 8, 1968).

intended to create social pressure. "[S]peech does not lose its protected character . . . simply because it may embarrass others or coerce them into action." *Claiborne*, 458 U.S. at 909-10. Citing *Brandenburg*, the Court approved protection for "[s]trong and effective extemporaneous rhetoric," and dismissed liability for acts of violence "weeks or months" after the speech in question. *Id*. at 928. Senator Long's dragnet effort to address riots by suppressing civil rights advocacy does not comport with *Claiborne*: "The right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." *Id*. at 908.

Senator Long's stated justifications for his legislation were aimed at suppressing the content of expression related to civil rights and racial justice. He singled out specific messages for punishment "because of disagreement with the message [the speech] conveys.'" *Reed*, 576 U.S. at 164 (quoting *Ward*, 491 U.S. at 791). By singling out specific ideas and speakers as targets for his legislation, Senator Long's statements also reflected both a content-discriminatory and a viewpoint-discriminatory purpose. "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Rosenberger*, 515 U.S. at 829. Viewpoint-based restrictions generally fail judicial scrutiny because they "rais[e] the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace." *Simon & Schuster, Inc. v. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991).

### 4.    § 231(a)(3) Fails Under Strict Scrutiny Because The Burdens It Imposes On Protected Expression Are Only Remotely Connected To Any Potential Federal Interest.

Because § 231(a)(3) is content-based on its face or in its legislative purpose, strict scrutiny applies. *Reed*, 576 U.S. at 163-164. To overcome strict scrutiny, the government has the burden of proving "that the restriction furthers a compelling interest and is narrowly tailored to achieve that

interest." *Reed*, 576 U.S. at 171. § 231(a)(3) cannot survive strict scrutiny because the relevant federal interest is remote and the statutory language lacks narrow tailoring.

First, the federal government's interest in prosecuting "any act" of interference with the duties of federal law enforcement officers is satisfied by other laws on the books. 18 U.S.C. § 111 protects law enforcement officers from forcible assault that encompass opposing, resisting, impeding, and interfering with police officers. This law amply protects police officers from public obstruction in the circumstances covered by § 231(a)(3). Accordingly, there is no *federal* interest in regulating the content of expression targeted under § 231(a)(3).

Second, there is not a legitimate government interest that supports the broad scope of § 231(a)(3). The terms of § 231(a)(3) could extend felony criminal liability to challenges and criticism directed at police officers. As previously mentioned, federal law punishes several forms of forcible assault that police officers commonly encounter in the performance of their duties. 18 U.S.C. § 111(a)(1). The comparative lack of narrow tailoring in the language of § 231(a)(3) shows that the law was meant to burden expression rather than serve a compelling government interest. Under strict scrutiny, no compelling governmental interest that arises under § 231(a)(3) can justify its impermissible purpose and its weighty burden on protected expression.

In sum, the prosecution of the defendant under Sec. 231(a)(3) is a suppression of the defendant's expressive conduct and inconsistent with the First Amendment.

**B.    Assuming that the First Amendment is not in Play, the Evidence was Not Sufficient to Sustain a Conviction for Violating § 231(a)(3).**

The evidence was not otherwise sufficient to convict under Sec. 231(a)(3). First, tossing a smoke bomb in the direction of the officers in the tunnel had little, if any, effect on the officer's performance of their mission, which was to prevent protestors from entering. Govt. Ex. 405 is a CCTV video from a camera mounted toward the rear of the tunnel at the lower west terrace. At 46

seconds through 1 minute and 20 seconds of the video, smoke can be seen wafting in the air in front of the tunnel. From this video, it is evident that smoke didn't fill the tunnel, but concentrated in front of the tunnel near the entrance or just inside. At 1minute and 6 seconds into the video, a few of the officers can be seen swinging batons at protestors who were in front of the officers, demonstrating that the officers were able to see who they were swinging at. The smoke in front of the tunnel actually had the effect of disbursing several protestors away from the tunnel – at least for a brief period. At no point did the officers move or fall back or allow protestors to come into the tunnel. Officer Jason Sterling, who was in the front line of the officers in the tunnel, testified that the smoke bomb was a "distraction." The Court found the defendant not guilty of assault on Officer Sterling, and expressly found that he was not trying to hit the officer when he tossed the smoke bomb. Thus, based on the totality of the evidence, the defendant's conduct was legally insufficient to prove that he obstructed, impeded or interfered with Officer Sterling's performance of duty.

Second, the civil disorder did not have a substantial impact on commerce. "The outer limits of congressional authority under the Commerce Clause prohibit the criminalization of noneconomic intrastate activity unless the regulated activity substantially affects interstate commerce." *United States v. Lopez*, 514 U.S. 549, 559 (1995)(*internal quotation marks deleted*). The Government introduced evidence that a single grocery chain's sales were reduced on January 6th. But this did not prove that the civil disorder was the cause of lost sales. There was no evidence that the disorder blocked highway traffic, prevented the movement of any article or commodity in commerce, or otherwise had a substantial effect on commercial or economic activity. The Mayor's decision to impose a 6:00 p.m. curfew on January 6, 2021, Govt. Ex. 703, cited by the Court as proof of an effect on commerce, does not show that the civil disorder had a substantial impact on

commerce. The Mayor's order heavily relies upon perceived dangers posed by potential spread of Covid rather than a disturbance at the Capitol on January 6. Id., pp. 584-85, ¶¶ 2-3. For these reasons, the evidence was insufficient to prove that a civil disorder at the Capitol had any *substantial* impact on commerce or economic activity.

Third, there was insufficient evidence to prove that the civil disorder adversely affected "the conduct or performance of any federally protected function." Federally protected function "means any function, operation or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States." 18 U.S.C. § 232(3). At the charge conference, the Court applied the federally protected function to the United States Capitol Police and the District of Columbia Metropolitan Police Department ("MPD"). Those police entities do not fall within the definitions a "department, agency, or instrumentality of the United States." Title 18, Sec. 6, provides the following statutory definitions:

> §6. Department and agency defined
>
> As used in this title:
>
> The term "department" means one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government.
>
> The term "agency" includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

There is no statutory definition for "instrumentality."

The United States Capitol Police and the District of Columbia's Metropolitan Police Department are not one of the "executive departments" enumerated under § 101 of Title 5. And "department" does not refer to an entire branch of government, at least in this context. § 6's definition of "agency" lacks specificity and "instrumentality" is undefined. The American College

Dictionary (1970) defines "instrumentality" as "1. The quality of being instrumental"; and "2. The fact or function of some purpose."  "Instrumental" is defined as well as "serving as an instrument or some means."  Ascribing broad definition to "instrumentality" is inconsistent with the more precise meaning Congress gave the word "department" which precede it. *Noscitur a socis* or associated-words canon applies here. "When several nouns or verbs or adjectives or adverbs – any words—are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar." READING LAW: The Interpretation of Legal Texts, Antonin Scalia and Brian A. Gardner (2012).  Reading "agency" and "instrumentality of the United States" as having common meaning with the more precise definition of "department" provided by § 6, "agency" and "instrumentality" do not include the Capitol Police and the Metropolitan Police Department, since they are not closely related to the meaning of "department" of the United States.

Because the Capitol Police and Metropolitan Police Department were not carrying out a "federally protected function," the evidence is insufficient to prove a violation of § 232(a)(3).

Finally, assuming those police agencies were engaged in a federally protected function, there is insufficient evidence that the performance of that function was obstructed, delayed or adversely affected.  The function of these bodies is a police function, i.e., to maintain order and enforce the law.  They performed that function during the civil disorder.  A function is not adversely affected because a police agency is called to respond to the Capitol for a civil disorder.  That is its function.  No one would say that the Federal Emergency Management Administration ("FEMA") is adversely affected because a hurricane hits the coast of the United States and it is called upon to act.  Moreover, it is now generally accepted that on January 6th the Capitol Police did not plan for it properly and there was a gross shortage of officers to protect Congress and the Capitol.  If the

Capitol Police were unable to perform their function properly, it was due to a deficiency of this kind.  It was not due to a civil disorder, which was a foreseeable event, and which could have been managed with a sufficient number of officers.

## II.     THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION ON COUNT TWO, WHICH CHARGED OFFENSES UNDER 18 U.S.C. SEC. 111(A)(1).

### A.     Assault is a Required Element of an Offense under § 111(a)(1).

The Court's verdict found the defendant guilty of the offense of assault on a law enforcement officer in violation of 18 U.S.C. § 111(a)(1).  The statute as a whole reads as follows:

§111. Assaulting, resisting, or impeding certain officers or employees

(a) IN GENERAL.—Whoever—

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

(2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,

shall, where *the acts in violation of this section* constitute only *simple assault*, be fined under this title or imprisoned not more than one year, or both, and where *such acts* involve physical contact with the victim of that *assault* or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

(b) ENHANCED PENALTY.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both. (*Emphasis added*.)

In announcing its verdict, the Court stated that the defendant was guilty of a felony under § 111(a)(1) because the acts charged involved physical contact.  The evidence was legally insufficient to prove this offense for the following reasons:

First, the Court's verdict found that the defendant did not commit an assault. Under the language and structure of the statute, assault is a required element of each of the offenses described in § 111(a)(1). As the Court has been made aware, there is a split in the circuits as to the correct interpretation of the statute. Three circuits – the 2nd, 9th and 10th -- hold that common law assault is an element of each offense punishable under § 111. *United States v. Davis*, 690 F.3d 127, 134-135 (2d Cir. 2012); *United States v. Chapman*, 528 F.3d 1215, 1219-1220 (9th Cir. 2008); *United States v. Wolfname*, 835 F.3d 1214, 1218 (10th Cir. 2016). Four circuits – the 4th, 5th, 6th, and 7th-- hold that assault is not a required element of the offense. *United States v. Briley*, 770 F.3d 267 (4th Cir. 2014); *United States v. Williams*, 602 F.3d 313 (5th Cir. 2010); *United States v. Gagnon*, 553 F.3d 1021 (6th Cir. 2009); *United States v. Stands Alone*, 11 F.4th 532 (7th Cir. 2021). The D.C. Circuit has not ruled on its interpretation of the statute with respect to this precise issue. Nevertheless, at the charge conference, this Court Judge Moss' interpretation of the statute in the case of *USA v. Bruno Joseph Cua*, 21-cr-00107 RDM (D.D.C.) ECF# 288, February 22, 2023, at p. 10, provided a correct interpretation of the statute. Judge Moss reasoned from the text of § 111(a)(1) that "the first two provisions required an assault." *Id*. (The "first two provisions" refer to misdemeanor assault and assault with physical contact.) The verdict reflects that the Court failed to apply Judge Moss' interpretation of the statute. If the Court had applied that interpretation, it would have acquitted the defendant of the felony assault with physical contact. Thus, a judgment of acquittal with respect to that felony is in order.

As to the third provision of § 111(a)(1), the Court's written judgment found that the defendant is guilty of committing acts which involve an *intent* to commit another felony, namely, the offense specified in Count One, i.e., § 231(a)(3). Because assault is a required element of each of the offenses described in § 111(a)(1), the defendant's acquittal of the assault is a complete

defense to the felony charge that the defendant's acts were committed with intent to commit another felony. In addition, for the reasons stated in Section I, there is insufficient evidence to prove an offense under § 231(a)(3), and the defendant must be acquitted of the § 111(a)(1) felony which charges acts that involve intent to commit another felony.

**B.      The Government Failed to Produce Sufficient Evidence that the Defendant's Forcible Acts Involved Physical Contact.**

Finally, the evidence was insufficient to prove that the defendant's acts involved "physical contact" with the victim of the offense. The smoke device tossed by the defendant was small and struck the shield with only minimal impact force. Open-source video shows that the defendant softly tossed the device. Govt. Ex. 511 at 2 minutes and 24 seconds into the video. Indeed, the Court did not find from the evidence that that the defendant committed an assault upon Officer Jason Sterling intend to hit the officer with the smoke bomb. In the end, it is clear from the evidence that the tossed smoke bomb did not strike Officer Jason Sterling physically. This is evident from the officer's body worn camera footage. *See*, Govt. Ex. 600 at one minute and 46 seconds into the video. Such evidence compels an acquittal of the felony of assault involving physical contact. § 111(a)(1) must be read in accordance with its language. It requires "physical contact." Under the ordinary meaning of those words that means physical contact means contact with the body of the victim. A criminal statute should be read in favor of the accused when the ambit of the statute is doubtful. *See*, *United States v. Bass*, 404 U.S. 336, 347 (1971)("'"ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity'") *quoting Rewis v. United States*, 401 U.S. 808, 812 (1971)). It is a strained reading of the statute to find the defendant guilty of assault with physical contact in circumstances in which a small smoke bomb is softly tossed by the defendant over the heads of several people standing on steps above him and it hits a hard shield which performed as it was intended to do, i.e., shield the officer from physical contact.

The minimal force of the defendant's toss is illustrated by Govt. Ex. 511 at 2 minutes and 25 seconds into the video.

> **C.     There was Insufficient Evidence to Prove that the Victim of the Assault Assisted a Specific Federal Law Enforcement Officer or to Show What the Duties that Officer Performed at the Time.**

18 U.S.C.  § 111(a)(1) punishes whoever "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in § 1114 of this title while engaged in or on account of the performance of official duties."  18 U.S.C. § 1114(a) provides in pertinent part:

> Whoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of such duties, any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished –

The government's evidence failed to prove that Officer Jason Sterling assisted a person designated in § 1114 at the time of the offense.  If he was assisting someone, the government did not present proof who that person was or whether that person was a person designated in Title 18 United States Code § 1114. Finally, there was no evidence presented by the government of the duties that person was engaged in at the time of the offense. For these reasons, the evidence was insufficient to prove an offense under § 111(a)(1).

## III.    THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN CONVICTIONS UNDER 18 U.S.C. § 1752(A)(1) AND (A)(2).

The defendant was convicted of Count Three, entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1). The evidence was legally insufficient to prove that offense for several reasons.

First, the evidence failed to prove that the defendant knowingly entered restricted grounds without lawful authority.  As the D.C. Circuit stated recently: "We have long recognized that the Capitol grounds – a series of lawns, only partially walled, surrounding the Capitol buildings – as

a traditional public forum." *John Maron Nassif v. United States*, U.S. Court of Appeals for the D.C. Cir., No. 23-3069, 04-29-24, p. 9 *(citing Lederman v. United States*, 291 F.3d 36, 46 (D.C. Cir. 2002). *See*, *Jeanette Rankin Brigade v. Chief of Capitol Police*, 342 F.Supp. 575, 584 (D.D.C. (three judge panel), *aff'd*, 409 U.S. 972 (1972)("Nor is the primary purpose for which the Capitol was designed – legislating—incompatible with the existence of all parades, assemblages, or processions which may take place on those grounds."). The Supreme Court has affirmed that "traditional public fora have historically been open for speech activities. Thus, even though the Act says nothing about speech on its face, there is no doubt … that it restricts access to traditional public fora and is therefore subject to First Amendment scrutiny." *McCullen v. Coakley*, 573 U.S. 464, 477 (2014). *See also*, *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1022 (9th Cir.2009) ("In traditional public fora … First Amendment protections are strongest, and regulation is most suspect.").

The government's security perimeter, shown in Govt. Ex. 205, was created to establish a perimeter for "restricted grounds" around the Capitol. The government's red-lined perimeter goes completely around the Capitol building and extends all the way down to the Peace Monument and Garfield Monument, the west of the Capitol; it also encompasses the North Lawn, Pennsylvania Lawn, the West Lawn, Maryland Lawn and the South Lawn. The government has failed to demonstrate a legitimate interest for closing off nearly 90% of the open areas, including walkways, of the Capitol grounds, keeping thousands of people far back from the object of their protest, which was to be seen and heard by their elected representatives. This burdens the right of speech to those who came to peaceably protest on January 6th. "For a time, place, or manner regulation to be narrowly tailored, it must not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *McCullen v. Coakley*, *supra*, at 486(*quoting Ward*, id., at 799).

There were other ways to protect Congress that day besides closing nearly all of the Capitol grounds to the public.  A greater number of police officers could have been posted to protect the Capitol and Congress.  If so, this would have allowed people to come onto the grounds for peaceable protest, discussion, assembly, and communication.   There simply was no justification to push people so far away from the Capitol, putting them in places where they could not be seen and heard by their elected representatives and diluting the effectiveness of their speech.  In sum, the prosecution of large numbers of people who entered a historically public forum for speech and assembly is a naked suppression of First Amendment rights, and the defendant's conviction for entering restricted grounds is inconsistent with that Amendment.

Third, the statute requires proof that the defendant knowingly entered or remained in "any restricted building or grounds," which are defined as "a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting."  As the statute is written, "knowingly" applies to each element of the crime.  *Rehaif v. United States*, 139 S.Ct. 2191, 2196 (2019)("we 'ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word "knowingly" as applying that word to each element'") (*quoting Flores-Figuera v. United States*, 556 U.S. 646, 650 (2009)). Thus, the government must prove that the defendant knew he was entering grounds where the President or other person protected by the Secret Service is or will be visiting.  It is beyond dispute that the government failed to produce any evidence to prove that the defendant possessed such knowledge.[2]

---

[2] Previously, this Court decided that the government was not required to prove knowledge of the presence of the Vice President in a restrictive area under § 1752. *See*, *United States v. Griffin*, No. 21-cr-92 (TNM), ECF No. 106 (D.D.C. Mar. 22, 2022) (McFadden, J.). Although certainly not binding, the defendant respectfully draws the Court's attention to the decisions made by other judges in this District which have come to the opposite conclusion after *Griffin. See* Verdict Tr. at 4, *United States v. Samsel*, No. 21-cr-537 (JMC) (D.D.C. Feb. 2, 2024) (Cobb, J.); *United States v. Groseclose*, No. 21-cr-311 (CRC), 2024 WL 68248, at *9 (D.D.C. Jan. 5, 2024) (Cooper, J.); *United States, v. Elizalde*, No. 23-cr-170 (CJN), 2023 WL 8354932, at *7 (D.D.C. Dec. 1, 2023) (Nichols, J.); *United States*

Knowledge of the Vice-President's presence is not an insignificant matter. It is the essence of what makes the conduct criminal in the first place. It is a well-established practice that "[w]hen interpreting federal criminal statutes that are silent on the required mental state, we read into the statute 'only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" *Elonis v. United States*, 575 U.S. 723, 734 (2015)(*quoting United States v. X-Citement Video*, 513 U.S. 64, 72 (1994). Under this principle, if § 1752(a)(1) is not read to require knowledge of the Vice President's presence on restricted grounds, the *mens rea* of it would have to be read into the statute. On January 6, literally thousands of people went on to the Capitol grounds that day and stepped into "restricted grounds." Many had no inkling that the Vice President or some other person protected by the Secret Service was in the restricted area. Because the government failed to adduce evidence that Lee was aware of the presence of the Vice President in restricted grounds, the evidence is insufficient to sustain a conviction under § 1752(a)(1).

§ 1752(a)(2), as alleged in Count Four, punishes "disorderly or disruptive conduct in, or within such proximity to any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." The evidence was insufficient to sustain a conviction for disorderly and disruptive conduct on restricted grounds for the reasons stated in respect to Count Three. Additional reasons for judgment of acquittal on this Count are now to be addressed.

First, "the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the public, is a fundamental principle of our constitutional

---

*v. Hostetter*, No. 21-cr-392 (RCL), 2023 WL 4539842, at *4 (D.D.C. July 13, 2023) (Lamberth, J.). Furthermore, the *Griffin* decision is on appeal to the United States Court of Appeals for the District of Columbia circuit.

system." *Stromberg v. California*, 283 U.S. 359, 369. As the Supreme Court stated in *New York Times Company v. Sullivan*, 376 U.S. 254, 270 (1964): "[I]t is a prized American privilege to speak one's mind, although not always with perfect taste, on all public institutions, *Bridges v. California*, 314 U.S.  252, 270, and this opportunity is to be afforded for 'vigorous advocacy' no less than 'abstract discussion.' *N.A.A.C.P. v. Button*, 371 U.S. 415, 429 (19  ).  There is "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times*, *supra*, 270. *See also*, *Terminiello v. Chicago*, 337 U.S. 1, 4; *De Jonge v. Oregon,* 299 U.S. 353 (1953). The defendant was engaged in expressive conduct on the grounds which by history, tradition and legal precedent are public fora for the exercise of speech, association and assembly, and his conviction under Count Four is inconsistent with the First Amendment.

Next, disorderly conduct must be such that it endangers public safety or creates a public disturbance.  *Alford v. United States*, D.C. Circuit, No 23-3023, Jan. 2, 2024, p. 8. Whether "conduct qualifies as disorderly depends on the surrounding circumstances." *Id*., p. 8.  The defendant's protected expressive conduct of tossing a smoke bomb at a demonstration did not endanger public safety or create a public disturbance. A robust protest was ongoing at that time. Because the exercise of expression was already at its zenith, the defendant's toss of a smoke bomb did not create a public disturbance.

The Government's evidence also failed to prove that the defendant's conduct was "disruptive."  The statute does not define the term. But by 4:46 p.m., the time of the defendant's actions, Congress had already adjourned for nearly three hours; so the defendant's conduct was not a cause of the initial disruption which led to adjournment.   In *Alford*, the Court held that

Alford's conduct was disruptive "because his presence in the Capitol contributed to the Congress' multi-hour delay in completing the electoral certification." Id., p. 14. The same cannot be said for the defendant, who never entered the Capitol. The statute mandates as an element of the offense that the *defendant's* conduct "in fact" impeded or disrupted the orderly conduct of Government business or official functions. The evidence that the defendant's conduct in fact delayed completing the electoral certification. If the defendant had not been there at all, nothing different would have happened. His conduct *outside* the Capitol in fact did not delay the proceedings *inside* the Capitol.

Based upon the foregoing, the defendant's conviction in Count Four for disorderly or disruptive conduct on restrictive grounds cannot be sustained and judgment of acquittal should be entered on Count Four.

## IV.    THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR COUNT SIX, DISORDERLY OR DISRUPTIVE CONDUCT ON CAPITOL GROUNDS.

Count VI alleged that the defendant violated Title 40 U.S.C. Sec. 5104(e)(2)(D), which punishes "engag[ing] in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol buildings with intent to impede, disrupt, or disrupt the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building or a hearing before, or any deliberations of, a committee of Congress or either house of Congress."

For all the reasons cited with respect to Sec. 1752(a)(2), the evidence was insufficient to sustain a conviction under Sec. 5104(e)(2)(D). The statute requires proof that the defendant acted "willfully and knowingly." Willfulness requires proof that the accused knew that the conduct he was charged with committing was unlawful. *United States v. Burden*, 934 F.3d 675, 693 (D.C. Cir. 2019)("willfulness requires that the defendant acted with knowledge that his conduct was unlawful.")(*Internal quotation marks omitted*.) The evidence fails to prove willfulness. An

intention to engage in lawful expressive conduct is inconsistent with knowledge that one's conduct

is unlawful.  Furthermore, at 4:46 p.m., Congress was adjourned, and the defendant had no reason

to believe that his conduct would have any effect on the count of votes in the Presidential election.

He simply did not appreciate that his conduct was unlawful, and therefore he did not act willfully.

He should be acquitted of Count Six.

Based upon the foregoing, the defendant's motion for judgment of acquittal should be

granted.

   /s/ *Terrell N. Roberts, III*   
Terrell N. Roberts, III
Bar ID No. 965061
*Attorney for Defendant*
6801 Kenilworth Avenue, Suite 202
Riverdale, Maryland 20737
(301) 699-0764
(301) 699-8706 Fax
TRoberts@robertsandwood.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Motion for Judgement of Acquittal was
electronically filed on September 5, 2024, via the CM/ECF File & Serve system, and an electronic
copy was e-served on:

Adam Michael Dreher, Esq. & Matthew E. Vigeant, Esq.
United States Attorney's Office for the District of Columbia
601 D Street, NW
Washington, D.C. 20053

   /s/ *Terrell N. Roberts, III*   
Terrell N. Roberts, III